| 64 | 87 |
| 92 | 280 |

---

[In Bank.—August 22, 1883.]

## THE PEOPLE EX REL. HENRY STODDARD, RESPONDENT, *v.* A. B. WILLIAMS, APPELLANT.

CLASSIFICATION OF COUNTIES—CENSUS.—The census referred to in section 4007 of the Political Code, by which the counties of the State are classified, is that taken by the United States.

ID.—EVIDENCE—CERTIFICATE OF SUPERINTENDENT.—A copy of the census returns certified by the superintendent is admissible to show the census results.

ID.—JUDICIAL NOTICE.—The courts will take judicial notice of census returns.

CONSOLIDATION OF COUNTY OFFICES—PUBLICATION BY SUPERVISORS.—To effect a consolidation of county offices, the order of the board of supervisors passed for such purpose must be published *by order of the board.* A publication in a newspaper of the proceedings of the board in which such order appeared is not sufficient.

APPEAL from a judgment of the Superior Court of Santa Barbara County.

The facts are stated in the opinion of the court.

*W. C. Stratton*, for Appellant.

The census referred to in section 4007 of the Political Code is not a United States census. At the time when the Codes were adopted the Constitution provided for the taking of a State census. (Art. 4, § 28.) When reference is made in any act of the legislature to the "Supreme Court" it means our State Supreme Court. No act of the legislature was ever passed referring to a United States officer, or proceeding of a United States department without designating the officer or department as being that of the United States.

It was error to admit the certificate of the United States superintendent, because the census was not completed, approved, adopted, and published by authority of the United States.

Publication of the order consolidating the offices of county clerk and recorder was not necessary; the publication was not necessary to give jurisdiction. Besides, the order of consolidation was a part of the proceedings of the board, and as all the proceedings are required to be published, we think that as the order was published among the proceedings, and the proceedings were published by order of the board, it was sufficient.

*Jarrett T. Richards*, and *Attorney-General Marshall*, for Respondent.

The census referred to in section 4007 of the Political Code could be no other than the United States census. The law had provided for no other. The Constitution directed the taking of the "enumeration" of the inhabitants in connection with the "census" taken under the direction of Congress. The legislature never directed any enumeration of the inhabitants of the State.

The court will take judicial notice of the census.

The offices of clerk and recorder were never consolidated. The publication of the order of consolidation was never made by direction of the board. (§§ 4106, 4107, Pol. Code; *People* v. *Bailhache*, 52 Cal. 310; *Herzo* v. *San Francisco*, 33 Cal. 135; *Fox* v. *Board of Supervisors*, 49 Cal. 565; *Crowell* v. *Martin*, 43 Cal. 605.)

THORNTON, J.—This is an action for alleged usurpation of the office of recorder of Santa Barbara County by defendant Williams. The relator was elected recorder of Santa Barbara County at the election in 1882, and defendant was elected at the same time county clerk of said county. Defendant claims by virtue of his election as county clerk to be *ex-officio* recorder.

By section 4006 of the Political Code, the counties of this State, for purposes other than for roads and highways, are classified as follows:—

1. Those containing twenty thousand inhabitants or over constitute the first class;

2. Those containing eight thousand inhabitants and under twenty thousand, are the second class; and,—

3. Those containing less than eight thousand inhabitants constitute the third class.

By section 4007 of same Code, "whenever a new census is taken, the counties, on the first day of July next thereafter are, by operation of law, classified under such census." Each county must have a board of supervisors, consisting of seven members in counties of the first class, of five members in those of the second class, and of three in those of the third class. (Pol. Code, § 4022.)

Under the provisions of section 4025 of the Political Code, whenever, under the classification above stated, the number of supervisors of any county is either increased or diminished, the board of supervisors must redistrict the county into supervisor districts, to correspond with the number of supervisors to which it is, under the new classification entitled. When the number is increased, at the first general election thereafter supervisors must be elected for such new districts in which no supervisors then acting reside.

The sections of the Code heretofore referred to, as well as those hereinafter referred to, were in force when the events occurred out of which the controversy in this case arose.

Prior to the first day of July, 1881, the county of Santa Barbara was, by operation of law, a county of the second class, and on the 11th day of August, 1882, the board of supervisors thereof passed an order redistricting the county into supervisor districts, so as to form five such districts, upon the ground that it had become, by an increase of population, a county of the second class, and thus entitled to have five members in its board of supervisors. In making this order, the board acted upon the census taken in 1880 by the authorities of the United States, under the provisions of the Act of Congress of March 3, 1879, entitled "an act to provide for taking the tenth and subsequent census." The census (the 10th) was to be taken on or for the date of June 1st, 1880. (Section 1 of Act, 20 Stats. at Large, 473.)

The enumeration to be made under the act of Congress was to commence on the first Monday of June, 1880, and be made by enumerators appointed under the act, and it was required of each enumerator to complete the enumeration of his district, and to prepare the returns required by the act to be made, and to forward the same to the supervisor of his district on or before the 1st day of July, 1880; and in any city having over ten thousand inhabitants under the census of 1870, the enumeration of population was to be taken within two weeks from the first Monday of June. (§ 10 of Act.) The returns of the enumerators were to be sent to the supervisors of the census, who were to scrutinize the same to see whether they were taken in compliance with law, and to forward the completed returns to the superintendent of the census at Washington City. (§§ 5, 2, 3.) By the census it appeared from a certificate of the superintendent of the census, which was offered in evidence on the trial, the population of Santa Barbara County was on the 1st day of June, 1880, *nine* thousand five hundred and thirteen (9,513), sufficient to raise it to a second-class county.

It is argued that the census referred to in section 4007 of the Political Code above quoted is not the census of the United States. But in this contention the counsel for appellant has

gone astray. We think it clear the reference is to such census. The census of the United States is a census of each particular State as well as of all the States. The enumeration taken under the act will show the inhabitants of each political division of the State. (§ 11.) In ordinary parlance when we speak of a census of the inhabitants of a State or any of its political divisions, we mean the United States census, for that is the only census in this State which is regularly and periodically taken. The board of supervisors had the authority to act on this census, and it did act by authority when it redistricted the county in August, 1882.

It is contended that the court erred in admitting in evidence the certificate of the superintendent above mentioned. We do not think so. The records of this census were under the care and in the custody of that officer, and on common-law principles, as the record could not be taken from his custody; a copy of such census, or any part of it, could be proved by a copy certified by him. But if this is not so, the court below and this court can take judicial notice of the results of such census (§ 1875, Code Civ. Proc.), and resort for information to appropriate documents of reference. (§ 1875, Code Civ. Proc.) That the census was complete when the board of supervisors acted on the 11th of August, 1882, and long before that period, we have no doubt. The most conclusive proof of it is found in the Act of Congress passed February 25, 1882, by which an apportionment of the representatives in Congress among the several States under the tenth census was made. (Stats of U. S. for 1881–82, p. 5.) Congress would certainly not have legislated in so important a matter as the apportionment of representatives among the several States, upon an incomplete census.

But it is urged that the relator could not have been legally elected recorder in 1882, for there was no such officer, the office of recorder having been in August, 1880, consolidated with that of county clerk, which consolidation the board of supervisors had authority to make, and defendant had been, at the election in 1882, elected county clerk, by which he became *ex-officio* county recorder.

Conceding that the board of supervisors had power to consolidate the offices as contended for, in 1880, still in order to effect

such consolidation, the order passed by the board for such purpose must have been published by order of the board. (§§ 4106, 4107, Pol. Code.) The publication in a newspaper of the proceedings of the board in which such order appeared was not sufficient. The board made no order for any publication, and therefore the publication above mentioned amounted to nothing, and the consolidation was not effected. Such was the ruling of this court in the *People* v. *Bailhache*, 52 Cal. 310, and we see no reason to doubt its correctness.

Judgment affirmed.

MYRICK, J., Ross, J., McKEE, J., and McKINSTRY, J., concurred.