[No. 11325.  Department Two.  January 23, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Henry Sieler,*
*Appellant,* v. WILLIAM H. VIRNIG, *et al., County*
*Commissioners, etc., Respondents.*[1]

ANIMALS—RUNNING AT LARGE—COUNTY COMMISSIONERS—HEARINGS
—RECONSIDERATION—PROCEEDINGS—FINALITY.  Under 3 Rem. & Bal.
Code, § 3172-1 *et seq.,* providing that the board of county commission-
ers may, after a hearing, designate, by an order made and published
or posted for four consecutive weeks, the boundaries of a district in
which it shall be unlawful to permit live stock to run at large, and
making it a misdemeanor to violate the order after it has been
published or posted, as required in Id., § 3172-3, the commissioners'
power is not fully exercised by the granting of an application upon
a hearing and the record entry of such action on the minutes; hence,
until the order is entered and published, the matter was in a deter-
minative stage, and the commissioners had power to give notice of a
reconsideration of the application.

Appeal from a judgment of the superior court for Grant
county, Steiner, J., entered May 16, 1913, denying a writ
of prohibition to prevent reconsideration of an order of the
board of county commissioners.  Affirmed.

*William M. Clapp* and *Herbert H. Sieler,* for appellant.
*C. G. Jeffers,* for respondents.

MORRIS, J.—This action was brought under Laws 1911,
p. 93, ch. 25 (3 Rem. & Bal. Code, § 3172-1 *et seq.*), au-
thorizing boards of county commissioners to create dis-
tricts in which livestock shall not run at large.  The case
was submitted to the court below and here upon an
agreed statement of facts, from which it appears that the
relator and others seeking to take advantage of the act
filed a petition with the board of county commissioners of
Grant county, seeking to have certain territory described
in the petition set aside as a district.  Due notice of the fil-
ing of this petition and of the time fixed for hearing was

[1]Reported in 137 Pac. 1039.

given, and on December 2, 1912, the matter came on to be heard. At this meeting of the board, two members only were present. Rem. & Bal. Code, § 3867 (P. C. 115 § 177), however, provides that two shall constitute a quorum for the transaction of business. The statement recites:

"And the said board, after hearing the said petition on the merits and fully considering the same and there being no opposition to the said petition or any part thereof; granted the petition as prayed for and ordered that livestock of all kinds be prohibited from running at large within the territory named in said petition, and notice given accordingly as required by law, and the said order was entered in accordance with the practice of the said board."

On December 3, the third member of the board appeared, and presented a remonstrance against granting the petition, and the board, after considering the remonstrance, made an order to the effect that the board would reconsider its action on the petition, and fixed January 7, 1913, as the time for a rehearing. Notice of this rehearing was given relator in the form of a letter from the county auditor. The statement then recites that no other notice of the hearing was contemplated, and that, at the hearing on January 7, the board intended to proceed "with the reconsideration of the said petition and to refuse to grant the petition." Relator then sued out this writ, in which he sought a decree holding the action of December 3 to be illegal, prohibiting the board from any reconsideration of its action of December 2, and requiring publication of an order prohibiting livestock from running at large within the territory described in the petition and order of December 2. This writ was denied, and he appeals.

The appeal presents this question: Did the board of county commissioners have the power to reconsider their action of December 2? The act of 1911, in so far as here applicable, provides:

"Section 1. That the board of county commissioners of any county of this state shall have the power to designate

by an order made and published, as provided in section three of this act, certain territory within such county in which it shall be unlawful to permit livestock of any kind to run at large. . . ."

"Sec. 3.   If the board of county commissioners shall determine to prohibit the running at large of livestock within the territory described in such petition or in any portion thereof, it shall make an order defining the boundaries of such territory, which shall be entered upon the records and published in a newspaper having general circulation in such territory for four successive weeks, or by posting in three public places in such territory for four weeks."

"Sec. 4.   Any person, or any agent, employee or representative of a corporation, violating any of the provisions of such order after the same shall have been published or posted as provided in section three of this act, shall be guilty of a misdemeanor, . . ."

It is, we think, clear from the reading of these sections that the power vested in the commissioners was not wholly exercised until the publication provided for in § 3.   The granting of the petition and the record entry of such action did not establish the contemplated district.   That could only be designated, in the language of § 1, "by an order made and published, as provided in section three."   And § 3 provided that the order should not only be entered of record, but published and posted for four weeks. While § 4, confirming the contention that the order did not become effectual until after the publication, provided there could be no violation of it until after its publication or posting.   When, therefore, the board, on December 3, determined to reconsider its action of December 2, the order was yet in the making.   It had not passed beyond the determinative stage, and was not a final or completed action under which rights, either property or personal, could have vested.   It does not seem to us that the requirement for the publication of the order of segregation was of a nature like to those statutes requiring the publication of the proceedings of boards of this character, which have sometimes been

held to be directory only and hence the failure to publish in no wise affected the proceedings. Under this law, a special power was conferred upon county commissioners, and the manner of its exercise specifically pointed out. It cannot be doubted that the power so conferred could be exercised only in the prescribed manner, and that the prescribed manner includes not only the making of an order but its publication or posting. Hence, we say that, on December 3, the matter was still within the discretionary power of the board, and it had the power to reconsider its action of the previous day.

In *People v. Bailhache*, 52 Cal. 310, in construing a statute empowering boards of supervisors to unite and consolidate county offices by "adopting, recording and publishing," an ordinance to that effect three months prior to an election, it was held that the adoption and recording were of no effect without the publication, and that under the statute the publication was as essential as the adoption or recording. This case seems to us to be directly in point. It was followed and a like rule announced in *People ex rel. Stoddard v. Williams*, 64 Cal. 87, 27 Pac. 939.

We do not think this appeal calls for a decision of the question submitted by the briefs as to the general power or right of county commissioners to reconsider their action. That question might have been presented had the commissioners made and published the order of segregation. We therefore do not discuss that question, except in so far as it may be embraced in what we have said.

The judgment is affirmed.

CROW, C. J., PARKER, MOUNT, and FULLERTON, JJ., concur.