STATE v. J. W. PREVO.

(Filed 26 November, 1919.)

1. **Municipal Corporations—Cities and Towns—Ordinances—Statutes—Taxation—License—Criminal Law.**

Upon the prosecution of a criminal action for the violation of a city ordinance, Rev., 3702, the State must show that the ordinance in question was a valid one, as well as the violation as charged in the warrant.

2. **Indictment—Warrant—Form—Waiver—Criminal Law.**

Ordinarily defects in the form of a warrant for violating a city ordinance may be waived, and usually it is so considered when a plea of not guilty is entered by the defendants.

3. **Municipal Corporations—Cities and Towns—Statutes—Ordinances—Legislative Control.**

Except when restricted by constitutional provision, municipalities, in the exercise of their governmental functions, are subject to almost unlimited legislative control, and a town ordinance in violation of a valid State statute on the same subject-matter is void.

4. **Taxation—License—Municipal Corporations—Cities and Towns—Classified as to Population—Census—Statutes.**

Where a statute classifies the cities, towns, or other subdivisions of the State by population, such classification, unless otherwise specified, is to be determined by some "official enumeration officially promulgated," and in

the absence of a State statute appertaining to the subject, or some authoritative municipal regulation, the Federal census is usually adopted and allowed as controlling.

**5. Same.**

> Our statute, Revisal, Acts of 1917, ch. 231, sec. 28a, regulating the amount of license tax to be charged for moving picture and vaudeville exhibitions in accordance with a stated classified population of towns, refers to the Federal census in use at the time, and a city ordinance of one of these towns which, by an unofficial or without a legally authorized enumeration of its inhabitants, places a higher license tax on these shows than is authorized under the Federal census report, is void, the amount to be collected being such as is shown by the Federal census, when no official or legally authorized method is otherwise provided.

**6. Same—Protest—Void Ordinances—Criminal Law.**

> Where a city or town ordinance imposes a license tax on a moving picture exhibit or other lawful enterprise in excess of that permitted by statute, and refuses to license such enterprise upon tender of the lawful tax, it is not necessary that the enterprise should have paid, under protest, the tax demanded for it to successfully defend itself under indictment for failure to have obtained the license. Rev., 3702.

CRIMINAL ACTION under section 3702, Revisal, for violation of ordinance of the city of Thomasville, in exhibiting a moving-picture show without license and without paying the tax as required by said ordinance, heard on appeal from recorder's court before *Bryson, J.,* and a jury, at July Term, 1919, of DAVIDSON.

The warrant on which the trial was had is in form as follows:

"Whereas, complaint has been made this day, on oath of Ira T. Johnson, city manager, that J. W. Prevo, on and after the 1st day of July, 1918, with force and arms, at and in said county, and within the corporate limits of the town of Thomasville, did unlawfully, willfully, and feloniously operate a moving-picture and vaudeville house without having procured city license thereof contrary to the statute in such cases made and provided, against the peace and dignity of the State, and in violation of the town ordinances, section Special Taxes," etc.

Plea of not guilty.

There was evidence on the part of the State tending to show that defendant conducted a moving-picture show in the town of Thomasville in 1918, and for the period after 31 May of said year, without having procured license as required by ordinance. That the license tax paid by him for previous year, and which expired 31 May, had been $30. The State and county, same tax. That the city government having raised the license tax to $60 for 1918-19, the city mayor demanded this amount of tax. Defendant refused to pay, tendering $30, the amount paid by him for the previous year, which was refused by the city. For this year

also the State and county collected each $30 license tax as in the previous year.

The city ordinance, passed in June, 1918, and which was put in evidence, requires persons upon whom a license tax was imposed to procure city license, and imposed a tax for 1918-19 of $60 for same. There was also evidence on part of State that in latter part of August, 1918, Mr. John Hauss, the superintendent of city graded schools, had of his own motion, and without any formal authority, undertaken to take the census of the city, and ascertained, according to his estimate, that there was then in Thomasville a white population of 4,400. That at the same time a witness named Mr. J. E. Boykin, principal of colored graded school, undertook the enumeration of the colored residents in the city, and ascertained that there were then 770 colored people in the city limits. These added together making the city population at said date, the latter part of August, 5,210.

On cross-examination, Mr. Hauss stated that in making his enumeration of the whites he had included "500 children who were at the orphanage in Thomasville, and also the children who had gone off to school"; stating also that the children at the orphanage were a floating population, leaving the city on a rule when they reach a certain age. The witness also stated that there were a good many families who move into Thomasville to work in the factories, and going back to the farms at the usual time. It was also shown that by the last Federal census, the only authorized enumeration of the population of Thomasville, the number of people were given to be 3,877.

The court being of opinion that on the evidence, if accepted, the defendant was guilty, so instructed the jury, who rendered a verdict of guilty. Judgment on the verdict; defendant excepted and appealed, assigning errors.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Howell R. Kyser for defendant.*

HOKE, J., after stating the case: In order to a legal conviction on a charge of this character, it is incumbent on the State to establish that there has been a violation of a valid ordinance; ordinary defects in the form of the warrant may be waived, and usually are waived by the general plea of not guilty, but charged with a misdemeanor in violating a town ordinance. A valid ordinance must be shown or the prosecution necessarily fails. *S. v. Snipes*, 162 N. C., 242; *S. v. Hunter*, 106 N. C., 796. On this question, the State statute applicable, Rev., Acts 1917, ch. 231, sec. 28 (a), makes provision as follows:

"On each room, hall, or tent used as a moving-picture or vaudeville show, a tax as follows: In town of less than one thousand five hundred inhabitants, ten dollars per annum; less than five thousand inhabitants and more than one thousand five hundred, thirty dollars per annum; less than ten thousand inhabitants and more than five thousand, sixty dollars per annum; in towns or cities with more than ten thousand inhabitants and less than fifteen thousand, one hundred dollars per annum; more than fifteen thousand inhabitants, one hundred and fifty dollars per annum. Counties, cities, or town shall not levy a greater amount of license tax than that of the State."

The same provision appears in the Laws 1915, and with a less amount of tax in 1913, etc.

It is well understood that municipalities, in the exercise of their governmental functions, are subject to almost unlimited legislative control, except when restricted by constitutional provision. And it is uniformly held that a town ordinance in violation of a valid State statute appertaining to the question is void. *Trustees v. Webb,* 155 N. C., 379; *S. v. Beacham,* 125 N. C., 652; *Shaw v. Kennedy,* 4 N. C., 591; 19 R. C. L., 803, and cases cited.

The generally accepted rule is that in statutes of this character, classifying the cities, towns, and other subdivisions of the State by population, that the classification, unless otherwise specified, is to be determined by some "official enumeration, officially promulgated," and in the absence of a State statute appertaining to the subject or some authoritative municipal regulation, the Federal census is usually adopted and allowed as controlling. The principle was approved in the New Jersey Court *In re city of Passais*—sewer construction, 54 N. J. Law, 156, where it was held, "That an act for the classification of cities of the State for the purpose of municipal legislation in relation thereto 'means population as determined by' an official enumeration officially promulgated," and *Justice Magie,* in the opinion, speaking to the question, said:

"The act for the classification of cities, above cited, fixes the grade of cities of the first, second, and third class by 'population.' How the population of any city is to be ascertained is not expressly declared. The contention is that population may be determined, like any other fact, by evidence, and that, when it thus appears that a city of the third class has acquired a population exceeding 12,000, it must be judiciously declared to be no longer a city of the third class, but one of the second class. If the question thus presented was limited to the construction of the original classification act, I think its solution not difficult. Neither parties litigant, nor municipalities, nor courts, have been empowered to make enumeration of inhabitants for the determination of the population. Any attempted enumeration, not accompanied with power to

STATE *v.* PREVO.

inquire and compel answer, would be a mere farce. The fact determined in one case in one way might be determined otherwise in another case.

It is inconceivable that the Legislature intended to make classification depend upon such uncertainties. It is apparent that population in this act bears the meaning of enumeration of inhabitants, and refers to such enumeration as the law provides to be made. Two such enumerations are provided for by law in each decade—one under United States authority, and the other under the laws of this State."

And as suggested here by this upright, wise, learned judge, any other principle would be productive of such uncertainties in the administrative measures affected as to be entirely impracticable.

There could be no better illustration of this position than by reference to the facts of this present case. Mr. Hauss, who attempted the enumeration, known to the writer to be intelligent and reliable, no doubt did all that could be done in such an effort, but he had no official rule to guide him; he had no assurance of correct answers to questions he might be called on to ask; in fact no means of compelling any answer at all. With the directness and candor to be expected from him, he says that in taking the number of the white population, which was all that he personally attempted, he included several hundred orphan children then in the town, or the orphanage there situated, a floating population. He included also numbers of citizens who had temporarily moved in from the country. The colored population was reported to him by an assistant, and what methods were pursued in reference to these is not shown. With all of these limitations and drawbacks, he was only able to report a population of 5,210, and this in the latter part of August, more than two months after the ordinance was enacted.

On reason and authority, therefore, we are of opinion that such an enumeration should not be allowed to affect the question; that it is neither competent in law nor sufficient in fact to justify a departure from the Federal census—the only authorized and official census extant at the time and to which the Legislature undoubtedly referred in the enactment of the statute.

This being the rule, and the Federal census showing that at the time of the enactment of the ordinance in question the population of Thomasville was only 4,877, the city was without power to levy a tax in excess of $30, the amount collected by the State and county, and the ordinance by which it was attempted to collect a tax of $60 is void.

The State does not contend that this conviction should be upheld, but submitting the matter to the judgment of the court, and prompted by the laudable desire to aid the court only to a correct conclusion, the Assistant Attorney-General, on the argument, frankly stated that he had been unable to find any good reason to justify the action of the town of Thom-

asville in the case. The endeavor to enforce collection of a tax of $60 when the State and county taxes only amounted to $30 allowed by the statute.

It is suggested, however, that the defendant should have paid the tax under protest, and was not justified in going on with his exhibit without the city license. If this were a valid ordinance and the question were whether same applied to defendant's business, or whether the authorities were justified in refusing a license, the position would be unchallenged. Such a position was approved by the Court in *S. v. Snipes, supra,* but the prosecution being for violation of an ordinance, there must be a valid ordinance, or, as stated at the outset, there is nothing upon which the prosecution may rest. To hold that an amount required by an unreasonable or void ordinance should be paid or tendered before a business, otherwise lawful, can be entered on would enable a municipal government by an exorbitant tax to arbitrarily suppress any business within its limits, however worthy or desirable. Nor can it be insisted that doing business without license is prohibited regardless of the amount of the tax, on the ground that the two are separable. This being a business expressly recognized and approved by a State statute, the town is without power to prohibit it. *S. v. Taft,* 118 N. C., 1190. The entire, and, assuredly, the chief end and purpose of the ordinance is to raise revenue, and the authorities having framed an ordinance requiring a tax in excess of the amount allowed by statute, the whole regulation must be declared void. *S. v. Webber,* 107 N. C., 962. In this case it was directly held, among other things: "That if part of an ordinance is void, all other clauses with which the invalid part is reasonably connected, or which are dependent on it, are also void."

For the reasons stated, we are constrained to differ with the learned judge in his disposition of the case, and on the facts as now presented are of opinion that the defendant is entitled to an acquittal.

Reversed.