L. L. DAVIS, TRADING AND DOING BUSINESS AS DAVIS' DRIVE-IN; JOSEPH ANTOON AND RAYMOND KALEEL, PARTNERS, TRADING AND DOING BUSINESS AS THE STORK DRIVE-IN; JAMES CASTANAS AND GEORGE CASTANAS, PARTNERS, TRADING AND DOING BUSINESS AS THE BOAR'S HEAD DRIVE-IN; J. S. BLACKWELDER, TRADING AND DOING BUSINESS AS BLACKWELDER'S BARBECUE; LEM LONG, JR., TRADING AND DOING BUSINESS AS SOUTHSIDE DRIVE-IN GRILL; ALONZO MACKINS, TRADING AND DOING BUSINESS AS OAK'S GRILL; JOHN P. TRIANTIS, TRADING AND DOING BUSINESS AS LITTLE WHITE HOUSE DRIVE-IN; L. E. BOYD AND V. L. TOWE, PARTNERS, TRADING AND DOING BUSINESS AS PLAZA GRILL; LYNDY'S GRILL, INC.; CHICKEN BOX, INC., v. THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION; FRANK N. LITTLEJOHN, CHIEF OF POLICE OF THE CITY OF CHARLOTTE; AND HENRY C. SEVERS, CHIEF ENFORCEMENT OFFICER OF THE ABC BOARD OF MECKLENBURG COUNTY.

(Filed 12 October, 1955.)

**1. Injunctions § 4g—**

While ordinarily the validity of a municipal ordinance creating a criminal offense may not be tested by injunction, injunctive relief may lie when it is manifest that otherwise property rights or the rights of persons would suffer irreparable injury.

**2. Municipal Corporations § 5—**

A municipal corporation is a creature of the General Assembly and may exercise only such powers as are expressly conferred by the General Assembly or such as are necessarily implied by those given.

**3. Municipal Corporations § 36—**

Municipal ordinances must harmonize with the general laws of the State, and when there is a conflict between a general State statute and a municipal ordinance, the ordinance must yield to the State law.

**4. Municipal Corporations § 38: Intoxicating Liquor § 2—**

Since the State regulations for the sale of beer make no distinction between on the premises sale of beer by a licensee inside his building and outside his building, a municipal ordinance prohibiting an on the premises licensee from selling beer outside his building, but on his premises, by "car hops," waitresses or other employees, is invalid as being in conflict with the State law.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.

APPEAL by defendant City of Charlotte from *McKeithen, Special Judge,* 11 July, 1955, Special Term, of MECKLENBURG.

Civil action to restrain the enforcement of certain ordinances adopted 15 June, 1955, by the City Council of the City of Charlotte.

A temporary order, issued *ex parte* by Rudisill, J., when this action was commenced, to wit, 24 June, 1955, restrained the defendants from the enforcement of all provisions of certain ordinances adopted 15 June, 1955, until the hearing on return of an order to show cause. At such hearing, before McKeithen, Special Judge, a jury trial was waived; and, after hearing the evidence, the judge made and stated separately his findings of fact, conclusions of law and entered judgment thereon.

The judgment *dissolved* the temporary restraining order: (1) as to Section 29, Article I, Chapter 19, of the City Code of Charlotte, which relates to the sale of beer and wine to, and to the purchase thereof by, minors under 18 years of age; and (2) as to Section 17-A, Article I, Chapter 19, of the City Code of Charlotte, which declares it to be unlawful "for any person, firm or corporation licensed to sell beer and/or wine, to sell or offer for sale, by curb service and/or car hop, any beer and/or wine, in the corporate limits of the City of Charlotte from the hour of 11:30 P.M. on each Saturday until 7:00 A.M. on the following Monday." (It is noted that said Section 17-A was adopted in the exercise of authority conferred by G.S. 18-107, which, in part, provides: "The governing bodies of all municipalities in the State shall have, and they are hereby vested with, the full power and authority to regulate and prohibit the sale of beer and/or wine from eleven-thirty p.m. on each Saturday until seven a.m. on the following Monday.") Hence, these ordinance provisions are not involved in this appeal.

The only ordinance provision as to which the temporary restraining order was continued and made permanent is Section 17-B, Article I, Chapter 19, of the City Code of Charlotte, which reads as follows:

"Section 17. B. SALE OF BEER AND WINE PROHIBITED BY CAR HOP AND/OR CURB SERVICE. At all times other than as provided in Section A hereof no beer or wine shall be sold to and/or delivered to the purchaser or anyone else by car hop and/or curb service."

The findings of fact made by the trial judge, to which no exception was taken, are as follows:

"1. That each of the plaintiffs is engaged in one of the types of business mentioned and described in G.S. 18-72 (1), and that each of the plaintiffs holds a valid license from the City of Charlotte and all other licenses required by law, known as 'on premises' licenses within the purview of G.S. 18-74 (1) to sell at retail beverages as defined in G.S. 18-64 (a).

"2. That each of the plaintiffs has, at considerable expense, prepared on a portion of his or its premises, for which said 'on premises' licenses have been issued, a proper, suitable and convenient parking area upon which members of the public may drive their automobiles and thereupon purchase and receive from the plaintiffs, and their agents, servants and employees, food and beverage, including beer, and which articles are delivered and served to the general public upon the premises of the plaintiffs by their agents, servants, and employees.

"3. That the agents, servants, and employees of the plaintiffs, commonly called 'car hops,' and so designated in the ordinances involved herein, are paid base salaries by the plaintiffs and said 'car hops' also have the privilege of receiving and accepting tips from the customers of the plaintiffs and to retain the money received in tips as their own, in the same way and manner as is customary with the employees of persons engaged in serving food and beverage; and such 'car hops' are not skilled employees.

"4. That the food and beverages sold and served by the plaintiffs are sold and served both on the inside of their buildings and on their parking lot premises on the outside of their buildings, and they dispense food and beverages during portions of the day and night; beer being dispensed only during the hours permitted by law.

"5. That the parking areas are lighted at night, but the lights in these areas are less brilliant than the lights on the inside of the buildings. However, it is generally brighter on the outside during the daytime than on the inside.

"6. That on June 15, 1955, the City Council of the City of Charlotte adopted and passed the ordinances and amendments of ordinances," referred to above, "and the law enforcement officers of the City of Charlotte have threatened and intend to enforce the provisions of said ordinances strictly in accordance with the terms thereof, as to the plaintiffs.

"7. That the Charter of the City of Charlotte provides in Section 31 (13) as follows: 'To pass ordinances for the due observance of Sunday and for maintenance of order in the vicinity of churches and schools.'

"8. That Section 31 (32) of said Charter contains a provision giving said City power to pass ordinances as follows:

" 'To pass such ordinances as are expedient for maintaining and promoting the peace, good government, and welfare of the city, and the morals and happiness of its citizens, and for the performance of all municipal functions.'

"9. That after the passage of said ordinances and prior to the issuance of the temporary restraining order herein, said ordinances adversely affected the business and income of the plaintiffs and caused the

gross income of the plaintiffs and their means of livelihood to be substantially reduced, and that the 'car hop' sales of the plaintiffs were reduced by approximately 50% during the period from June 16, 1955, to June 24, 1955, the date of the temporary restraining order in this cause; and that such losses as were suffered by the plaintiffs cannot be recovered in a court of law.

"10. (Analysis of affidavits submitted by five of plaintiffs disclosing losses sustained when ordinances were being enforced.)

"11. That no evidence was introduced by the defendants and nothing was offered by the defendant City to show the necessity or occasion for the passage of Section 17-B of said ordinances, or to show that said Section 17-B was passed to correct a situation which was injuriously affecting the health, safety, morals, good order, or general welfare of the community."

The judgment entered was adverse to the position of the appellant, City of Charlotte, only in one respect, namely, it restrained the enforcement of Section 17-B, Article I, Chapter 19, of the City Code of Charlotte, "as far as said Section 17-B relates to the sale of beer by car hops on the private property of the plaintiffs," other than within the period from the hours of 11:30 p.m. on each Saturday until 7:00 a.m. on the following Monday. The City of Charlotte excepted to and appealed from this provision of the judgment, this being the basis of its only assignment of error.

*No counsel for plaintiffs, appellees.*
*John D. Shaw for defendant City of Charlotte, appellant.*

BOBBITT, J.   Ordinarily, the validity of a municipal ordinance purporting to create a criminal offense may be challenged and tested only by way of defense to a criminal prosecution based thereon. Equity will not interfere by injunction to restrain the enforcement of such municipal ordinance on the ground of its alleged invalidity *except* when it is manifest that otherwise property rights or the rights of persons would suffer irreparable injury. *Lanier v. Warsaw*, 226 N.C. 637, 39 S.E. 2d 817; *Loose-Wiles Biscuit Co. v. Sanford*, 200 N.C. 467, 157 S.E. 432. The court below, upon the facts found, concluded that injunctive relief was necessary to protect plaintiffs from irreparable injury to their property rights. No exception or assignment of error is addressed to this conclusion of law. Indeed, appellant specifically requests that the validity of the ordinance be considered on this appeal. Under these circumstances, the procedural question requires no further discussion. Compare: *Suddreth v. Charlotte*, 223 N.C. 630, 27 S.E. 2d 650.

We come now to consider Section 17-B, Article I, Chapter 19, of the City Code of Charlotte. The court below adjudged this ordinance invalid and restrained its enforcement to the extent stated above. In our opinion, the judgment entered is correct and must be affirmed.

A municipal corporation is a creature of the General Assembly. *Ward v. Elizabeth City,* 121 N.C. 1, 27 S.E. 993. Municipal corporations have no inherent powers but can exercise only such powers as are expressly conferred by the General Assembly or such as are necessarily implied by those expressly given. *S. v. Ray,* 131 N.C. 814, 42 S.E. 960; *S. v. McGee,* 237 N.C. 633, 75 S.E. 2d 783.

"Municipal ordinances are ordained for local purposes in the exercise of a delegated legislative function, and must harmonize with the general laws of the State. In case of conflict the ordinance must yield to the State law." *S. v. Freshwater,* 183 N.C. 762, 111 S.E. 161, and cases cited therein. A decision of this Court in 1883 applied this well established principle when there was conflict between a general State statute and a municipal ordinance of the City of Goldsboro, both dealing with the sale of intoxicating liquor on Sunday. *S. v. Langston,* 88 N.C. 692. It may be conceded that the City of Charlotte, under its charter provisions and under G.S. 160-52 and G.S. 160-200 (6) (7) (10), had implied authority to adopt the ordinance in controversy *in the absence* of legislation enacted by the General Assembly dealing directly with the subject. *Bailey v. Raleigh,* 130 N.C. 209, 41 S.E. 281; *Paul v. Washington,* 134 N.C. 363, 47 S.E. 793. But it is quite plain that the City of Charlotte cannot, by ordinance, make criminal or illegal any conduct that is legalized and sanctioned by the General Assembly. The ordinance, to the extent it conflicts with the general State law, is invalid. *Lee v. Chemical Corp.,* 229 N.C. 447, 50 S.E. 2d 181; *Eldridge v. Mangum,* 216 N.C. 532, 5 S.E. 2d 721; *S. v. Prevo,* 178 N.C. 740, 101 S.E. 370.

The Turlington Act prohibited the sale of beer. Public Laws of 1923, ch. 1; G.S. 18-1 *et seq.* Modifications thereof include the Beverage Control Act of 1939. Public Laws of 1939, ch. 158; G.S. 18-63 *et seq.* The sale of "beer" as defined in G.S. 18-64 (a), by persons who are licensed to do so, is expressly authorized. G.S. 18-65, G.S. 18-75, G.S. 18-77.

State statutes fix the hours when the sale and consumption of beer on the licensee's premises are permitted. G.S. 18-105, G.S. 18-106, G.S. 18-141.

G.S. 18-72 provides: "Character of license.—License issued under authority of sec. 18-64, subsection (a) shall be of two kinds:

"(1) 'On premises' license which shall be issued for *bona fide* restaurants, cafes, cafeterias, hotels, lunch stands, drug stores, filling stations,

grocery stores, cold drink stands, tea rooms, or incorporated or chartered clubs. Such license shall authorize the licensee to sell at retail beverages for consumption on the premises designated in the license, and to sell the beverages in original packages for consumption off the premises.

"(2) 'Off premises' license which shall authorize the licensee to sell at retail beverages for consumption only off the premises designated in the license, and only in the immediate container in which the beverage was received by the licensee.

"In a municipality the governing board of such municipality shall determine whether an applicant for license is entitled to a 'premises' license under the terms of this article, and outside of municipalities such determination shall be by the board of commissioners of the county."

The licensee must pay both a State license tax and a license tax to the municipality. G.S. 18-79, G.S. 18-74.

The first finding of fact, quoted above, establishes that each of the plaintiffs has a valid "on premises" license. This being true, the plaintiffs are authorized to sell beer on their private premises as long as they do so in compliance with the law governing such sales. Nothing in the applicable State statutes suggests that the law is different depending upon whether sale or delivery "on premises" of the licensee is made by "car hops," waitresses, other lawful employees, or by the manager or proprietor in person. And, in the absence of a restrictive statutory definition, the word "premises" when applied to a Drive-In restaurant must be held to include the entire private property area designed for use by patrons while being served. The extent of the legislative authority conferred upon a municipality by G.S. 18-107 is "to regulate and prohibit" the sale of beer from 11:30 p.m. on each Saturday until 7:00 a.m. on the following Monday.

If the present State statutes make difficult the detection and prosecution of conduct prohibited by G.S. 18-78.1, such as sales to persons under 18 years of age, sales to intoxicated persons, etc., the General Assembly alone can determine what change, if any, should be made.

The enforcement of the ordinance provision is restrained only as to sales made on the private property, that is, "the premises," of the plaintiffs. Section 17-B, Article I, Chapter 19, of the City Code of Charlotte was adjudged legal, valid and enforceable, "as far as it affects and regulates the sale of beer at the curb of city streets to any person who, at the time of such purchase, is standing on, or in a car parked on, any portion of the city street."

Affirmed.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.