## Windber Country Club Appeal

*William E. Moot,* for appellant.
*Walter A. Criste,* for Pennsylvania Liquor Control Board.

McWILLIAMS, *P.J.,* June 30, 1977—On June 18, 1976, the Windber Country Club, a golfing country club, filed an application for extension of its Club Liquor License CC — 5617. Petition was filed under Pennsylvania Code, Title 40, §7.21, as amended March 16, 1976, filed and approved by Legislative Reference Bureau, March 23, 1976. See April 2, 1976, 6 Pa. Bull. 832. The Board refused the application at Executive Session, July 21, 1976. On September 16, 1976, a hearing was held on the Application and the Board again, by order dated November 4, 1976, refused the application. This appeal followed.

40 Pa. Code §7.21, was an amendment adopted for only a special purpose of Bicentennial activity. As stated in Pennsylvania Bulletin, 6 Pa. Bull. 832:

"The amendment is being adopted because the Commonwealth and municipalities of the Commonwealth have been cooperating in the promotion of bicentennial activity, and part of the promotion has included suggestions that retail licensees engaged in the sale of alcoholic beverages be permitted to make such sales in sidewalk cafes made part of their licensed premises."

Needless to point out, Windber Country Club wasn't Philadelphia, the Bicentennial City, and no Bicentennial purpose was at issue. The Bicentennial is now over and the application was properly refused.

However, we hold that application for a right which appellant already had was a useless and needless application. A country club license is distinguished from a restaurant and hotel license: Appeal of Chester County Tavern Association, 20 Chester 198 (1971); also Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §4-401.

Country clubs having club licenses are permitted to purchase liquor from a Pennsylvania Liquor Store, and to keep on the premises such liquor and, subject to the provisions of this act, and the regulations made thereunder, to sell the same and also malt or brewed beverages, to guests, patrons or members for consumption on the club *premises:* 47 P. S. §4-401.

The premises of a golfing club most certainly envision and must include the golf course and this, of necessity, includes a half-way house on the course grounds. The sale of a beverage at a half-way house on the golf course to the active golfer is the exercise of a power expressly conferred by the General Assembly and necessarily implied by those

expressly given powers: Davis v. City of Charlotte, 242 N.C. 670, 89 S.E. 2d 406 (1955).[1]

The active golfers using the half-way house where they may be served by proper club personnel is an inherent right within the framework of the expressed right mandated by the Legislative mandate. The half-way house is a necessity to the golfer. The term will be given a broad construction so as to meet substantial need in relation to pleasure, convenience and general welfare of persons who would make use of the facility: Aqua Club Liquor License Case, 202 Pa. Superior Ct. 192, 195 A.2d 802 (1963).

The half-way house provides shade, shelter and refreshment along the golfer's way, as substantial a need as getting out of the water in swimming apparel and relaxing with an alcoholic beverage at a swim club: Aqua Club case, supra.

The half-way house is the oasis of the golfer who, after unbelievable bad bounces, divot-lies, tree obstructions and water hazards, climbs from the Sahara traps, 3-putts an unbelievable green, then drags his weary body to the shade of the half-way house offering momentary respite and relaxation

---

1. Davis v. City of Charlotte, 242 N.C. 670, 89 S.E. 2d 406, 410 (1955), where court said in view of statute authorizing holder of "on premises" liquor license to sell beverages for consumption on premises, City could not, by ordinance, prohibit licensee from selling beverages through carhops, to occupants of automobiles parked on licensee's premises. "Premises" within statute providing that holders of "on premises" liquor licenses may sell at retail, beverages for consumption on premises designated in license included, when applied to a drive-in restaurant, the entire properly area designed for use by patrons for being served.

and furnishing some degree of happiness and re-
newed hope for the back nine. Half-way is the
golfer to success or half-way to failure. To deny
him the joy and rejuvenation of the cool beverage
would to the golfer be like denying mother's milk to
the new born baby. We can deny him not encour-
agement and the "arms" against the slings and
arrows of outrageous fortune. When he departed
from No. 1 tee, three miles or so before, — so proud
— so courageous — so confident — could he not
expect this mecca was awaiting him, regardless of
his success or failure — an inherent right to a ven-
ture of seeking health, walking with a purpose,
and a Holy Grail pursuit of that one "perfect"
game? Now, after the exasperation of a "trick or
treat" front nine, is he to be denied any fulfill-
ment?

We hold that a golfing club license envisions a
golf course with a half-way house as the premises,
and golfing members, guests and patrons may be
sold beverages for consumption on said golf course
premises.

The State Statute may not be infringed upon.
The licensee cannot be prohibited from selling
beverages through proper club personnel to golfers
on licensed premises, and this includes the golf
course with half-way houses. "Premises" within
the Statute provides that holders of "on premises"
liquor licenses may sell liquor, malt or brewed
beverages to guests, patrons or members for con-
sumption on premises designated in license. And
this includes, when applied to a Golfing Country
Club license, the entire property area designed for
use by golfers, which would include the golf course
with half-way houses thereon: Davis v. City of
Charlotte.

448

Now therefore, we make the following

ORDER

And now, June 30th, 1977, the order of the Liquor Control Board dated November 4, 1976, refusing the application of petitioner, is sustained, but in accordance with this opinion; and the appeal is accordingly dismissed without prejudice to petitioner.