IN RE APPLICATION OF CHARLES STEVEN MELKONIAN FOR A SPECIAL
EXCEPTION USE PERMIT (FORMERLY STEVEN MELKONIAN, PETITIONER
v. BOARD OF ADJUSTMENT OF THE CITY OF HAVELOCK, ORGANIZED
AND EXISTING UNDER THE HAVELOCK CITY CODE AND N.C.G.S. 160A-338, RE-
SPONDENT)

No. 863SC982

(Filed 5 May 1987)

**Intoxicating Liquor § 1.2; Municipal Corporations § 30.6 — city's denial of special
use permit for tavern — preemption by ABC permit**

The decision by the ABC Commission to grant petitioner a permit for the
sale of malt beverages preempted and rendered unlawful a decision by re-
spondent city board of adjustment to deny petitioner a special exception use
permit to operate a tavern, since N.C.G.S. § 18B-901 establishes the General
Assembly's intent to delegate to the ABC Commission the exclusive authority
to determine the suitability of applicants to obtain permits to sell alcoholic
beverages.

APPEAL by respondent and cross-appeal by petitioner from
*Phillips, Herbert, III, Judge.* Order entered 3 July 1986 in Superi-
or Court, CRAVEN County. Heard in the Court of Appeals 4 Feb-
ruary 1987.

This is a proceeding to judicially review a zoning board deci-
sion. Petitioner Steven Melkonian, pursuant to G.S. 160A-388(e),
petitioned the Superior Court, Craven County, to issue a writ of
certiorari to respondent, the Board of Adjustment of the City of
Havelock.

Petitioner applied to the City of Havelock, North Carolina,
for a privilege license so that he could operate a business which
would, among other things, sell alcoholic beverages. The location
of petitioner's proposed business was known as the "Luzzader
Building." The "Luzzader Building" is situated in the "Slocum
Village Shopping Center." Petitioner was informed that pursuant
to Havelock Zoning Ordinances, he was required to obtain a Spe-
cial Exception Use Permit so that he might operate a tavern.

Petitioner filed a Special Exception Use Permit Request to
allow "a tavern in the Luzzader Bldg. (Formally Furniture Dis-
tributors) located in the Slocum Village Shopping Center." At a
regular meeting of the Havelock Planning Board a motion was
made to forward to respondent, with recommendation for approv-
al, petitioner's Special Exception Use Permit Request.

On 13 November 1985, pursuant to G.S. 18B-901, petitioner filed an application with the North Carolina Alcoholic Beverage Control Commission (hereinafter ABC Commission) for an on-premise malt beverage permit for a business to be known as "Bonzo's."

On 20 November 1985, respondent conducted a public hearing at which time the planning board's recommendation for approval of petitioner's Special Exception Use Permit Request (hereinafter S.E.U. permit request) was considered. In a letter dated 21 November 1985, respondent informed petitioner that his S.E.U. permit request was denied.

On 9 December 1985, petitioner's application for an on-premise malt beverage permit was denied by the ABC Commission for the stated reason that "[t]he applicant and location cannot be considered suitable to receive or hold said permit due to local government objections." Petitioner requested of the ABC Commission that he be given an opportunity to show cause why he should be issued an on-premise malt beverage permit. A hearing date was set for 3 April 1986.

On 13 December 1985, petitioner applied for and was issued a city license "to practice or carry on the Trade, Profession or Business of Bonzo's." Petitioner's application characterized his proposed business as an "arcade and dance hall."

On 20 December 1985, petitioner, pursuant to G.S. 160A-388 (e), filed a "Petition For a Writ of Certiorari." Petitioner, in his petition, requested judicial review of the 20 November 1985 Order of respondent that denied petitioner's "request for a Special Exception Use Permit to put a tavern in the Luzzader Building." In his pleading, captioned, "Petition For Writ of Certiorari," petitioner alleged, *inter alia*: that defamatory statements made by a member of the Havelock Board of Adjustment were untrue and were an attempt to sabotage petitioner's efforts to secure an S.E.U. permit; that the record was totally devoid of any competent evidence to support the findings and or conclusions of respondent; and that respondent's denial of petitioner's request "is arbitrary and capricious and is wholly unsupported by competent evidence, findings of fact, conclusions, and the laws of this state."

On 7 February 1986, this matter was heard in Superior Court, Craven County. In an order filed 18 March 1986, the trial court retained jurisdiction and remanded this matter to respondent to "the end that it [respondent] may enter an appropriate order, allowing or denying the application, in which it states the basic facts adduced from the evidence presented to it at its hearing conducted on November 20, 1985, on which it relies in entering the order, with sufficient specificity to inform the parties and the court what induced its decision." (85CVS1997) The trial court ordered that respondent return the new order by 25 March 1986, in default of which the court stated it would order respondent to grant petitioner's S.E.U. permit request.

On 3 April 1986, petitioner went before an ABC Commission Hearing Officer for the purpose of showing cause why he should be issued a permit for operation of a business trading as "Bonzo's." The hearing officer made findings of fact including, *inter alia*, that "[t]he type business Melkonian proposes to operate is a combination tavern, gameroom & nightclub, and is a 'retail business' as defined in G.S. 18B-1000(7)." In making his recommendation for approval of petitioner's application to the ABC Commission, the hearing officer concluded that "[t]he North Carolina Alcoholic Beverage Control Commission has the authority to determine the qualifications of an applicant and the suitability of a location for the issuance of ABC permits, and to issue or deny issuance of permits according to the ABC laws. G.S. 18B-901."

On 5 May 1986, in accordance with G.S. 18B-104 and G.S. 150A-36, the ABC Commission reviewed the hearing officer's findings of fact and recommendations so that a final administrative decision could be reached. On 5 May 1986, after the hearing, the ABC Commission approved petitioner's application and directed that petitioner be issued an on-premise and off-premise malt beverage permit.

On 5 May 1986, petitioner applied to the Tax Collector of the City of Havelock for a beer license. The tax collector refused to issue petitioner a beer license.

On 8 May 1986, the City of Havelock filed a petition in Superior Court, Craven County, seeking judicial review of the final administrative decision by the ABC Commission to grant petitioner a permit to sell malt beverages on and off petitioner's business

premises (86CVS653). On the following day, 9 May 1986, the City of Havelock filed a complaint, also in Superior Court, for a declaratory judgment. The City of Havelock, in its complaint for a declaratory judgment, sought a declaration, *inter alia*, that "the City's Zoning Ordinance and its Board of Adjustment's decision concerning the unsuitability of Defendant Melkonian's proposed site for his tavern in the City is superior to, and takes precedence over, any authority which the ABC Commission may have to make any ruling as to suitability of a particular location for use as a tavern." Petitioner and the ABC Commission were named as defendants in respondent's complaint that prayed for a declaratory judgment.

On 10 June 1986, the ABC Commission, pursuant to Rule 12, N.C. Rules Civ. P., made a motion to dismiss the City of Havelock's action for judicial review of the ABC Commission's final administrative decision to grant petitioner an on-premise and off-premise permit (86CVS653). Petitioner made a motion to join in the ABC Commission's motion to dismiss.

On 10 June 1986, petitioner filed his answer to the City of Havelock's complaint filed in the declaratory judgment action (86CVS658). Petitioner, on 10 June 1986, also filed a Rule 12(c), N.C. Rules Civ. P., motion to dismiss the City of Havelock's declaratory judgment action (86CVS658).

Petitioner, on 11 June 1986, filed a motion in this action he instituted 20 December 1985 (85CVS1997). Petitioner, in his motion, suggested to the court "that the questions raised by the appeal from the respondent Board of Adjustment of the City of Havelock are now moot [by virtue of the fact that the ABC Commission issued petitioner a permit] and moves the Court for entry of an order directing the issuance of a certificate of zoning compliance by the Havelock Zoning Officer, Charles Satanski, the Executive Secretary of the respondent Board of Adjustment, and/or the special exception use permit by the Board of Adjustment. . . ." Attached to petitioner's motion were the pleadings filed in 86CVS653 and 86CVS658 along with a copy of the permit issued by the ABC Commission.

In an order filed 3 July 1986, the trial court made findings of fact, conclusions of law, and ordered the Tax Collector of the City of Havelock to issue petitioner "those city licenses to which he is

entitled" (85CVS1997). From the 3 July 1986 order, petitioner and respondent appeal.

*Ward, Ward, Willey & Ward, by A. D. Ward, for petitioner appellant.*

*Ward and Smith, P.A., by William Joseph Austin, Jr., for respondent appellant.*

JOHNSON, Judge.

Respondent, in its brief, brings forward three Assignments of Error. Respondent's fourth Assignment of Error is not supported by argument; therefore, we deem that it is abandoned. Rule 28(b) (5), N.C. Rules App. P.

Petitioner, in his brief, presents a single Assignment of Error, for our review. Petitioner assigns error to the trial court's finding of fact that respondent's findings in its second order were supported by competent evidence.

Although the Record on Appeal contains numerous pleadings and references to pleadings filed by petitioner and the City of Havelock, we have only one order (85CVS1997) that is properly before us for our review. We first address respondent's appeal from the 3 July 1986 order.

### Respondent's Appeal

By its second Assignment of Error respondent contends that the trial court erred by addressing and ruling upon the question presented by petitioner's motion, to wit: whether the ABC Commission's granting of a permit to petitioner preempted respondent's decision to deny petitioner's S.E.U. permit request and therefore rendered the issues before the court as moot. For reasons to follow, we hold that the trial court correctly ruled that the decision by the ABC Commission to grant petitioner a permit for the sale of malt beverages preempted respondent's decision to deny petitioner an S.E.U. permit to operate a tavern. Accordingly, we affirm the trial court's order.

### I

Petitioner's "Petition For Writ of Certiorari" alleged, in pertinent part, the following:

3. That the record reveals that, at the November 20, 1985 hearing, the Havelock Board of Adjustment allowed incompetent and immaterial evidence to be admitted to the prejudice of the petitioner, which resulted in the decision of the Havelock Board of Adjustment being based upon moral issues, *outside of the scope of its authority*, in violation of the petitioner's rights to due process.

4. That the conclusions of law contained in the Order of the Havelock Board of Adjustment are not supported by the Findings of Fact contained therein.

5. That based upon the foregoing and the record in this cause, the decision of the Havelock Board of Adjustment denying the petitioner's request for a Special Exception Use Permit is arbitrary and capricious and *is wholly unsupported by* competent evidence, findings of fact, conclusions, and *the laws of this state.*

(Emphasis supplied.)

It is evident from the emphasized portions of the petition that petitioner was alleging that respondent's decision to deny his S.E.U. permit request was contrary to law. The basis of petitioner's motion was: that "no city in the State of North Carolina, including the City of Havelock, may regulate, by zoning ordinance or otherwise, a field which has been preempted by the State of North Carolina," G.S. 160A-174(b); that G.S. 18B-901 vests in the ABC Commission, "the sole power in its discretion, to determine the suitability and qualifications of an applicant for a permit"; that upon payment of prescribed tax, issuance of a State or local license is mandatory if an applicant holds the corresponding ABC permit; and that petitioner was lawfully entitled to the appropriate local licenses since he was in possession of the corresponding ABC Commission permit.

A zoning board acts in a quasi-judicial capacity when it hears evidence to determine the existence of facts and conditions upon which the ordinance expressly authorizes it to issue a special use permit. *Humble Oil & Refining Co. v. Board of Aldermen of the Town of Chapel Hill*, 284 N.C. 458, 469, 202 S.E. 2d 129, 137 (1974). The zoning board's decision is "subject to the right of the courts to review the record for errors in law and to give relief against

its orders which are arbitrary, oppressive or attended with manifest abuse of authority." *Id.*

Petitioner, pursuant to G.S. 160A-388(e), filed his "Petition For Writ of Certiorari." G.S. 160A-388(e) states in pertinent part, the following:

> Every decision of the board shall be subject to review by the superior court by proceeding in the nature of certiorari.

In *Coastal Ready-Mix Concrete Co., Inc. v. Board of Commissioners of the Town of Nags Head*, 299 N.C. 620, 624, 265 S.E. 2d 379, 382, *rehearing denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980), the North Carolina Supreme Court stated, "we cannot believe that our legislature intended that persons subject to zoning decisions of a town board would be denied judicial review of the standard and scope we have come to expect under the North Carolina APA." The Court in *Coastal Ready-Mix Concrete Co.*, extrapolated from the scope of review set forth in the Administrative Procedures Act, G.S. 150A-51, the following tasks of a court reviewing a decision on an application for a conditional use permit:

> (1) Reviewing the record for errors in law,
>
> (2) *Insuring that procedures specified by law in both statute and ordinance are followed,*
>
> (3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses and inspect documents,
>
> (4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and
>
> (5) Insuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E. 2d at 383.

From the foregoing it is apparent that the trial court did not exceed its scope of review that was in the nature of certiorari. Accordingly, we hold that it was incumbent on the trial court to *insure* that respondent's decision was not contrary to State law and was authorized by local ordinance. If the ABC Commission had rendered a statutorily authorized decision contrary to re-

spondent's decision to deny petitioner's S.E.U. permit request then it was necessary for the trial court to consider the question of whether respondent's decision was contrary to State law.

## II

It is well settled that a municipal corporation is a creature of the General Assembly and that a municipal corporation can only exercise such powers as are expressly conferred by the General Assembly or such as are necessarily implied by those expressly given. *Davis v. The City of Charlotte*, 242 N.C. 670, 674, 89 S.E. 2d 406, 409 (1955). "Municipal ordinances are ordained for local purposes in the exercise of a delegated legislative function, and must harmonize with the general laws of the State. In case of conflict the ordinance must yield to the State law." *Id.* at 674, 89 S.E. 2d at 409 (quoting *State v. Freshwater*, 183 N.C. 762, 762-63, 111 S.E. 161, 162 (1922) ).

G.S. 160A-174 establishes, *inter alia*, that local ordinances are preempted by North Carolina State law when local ordinances are not consistent with State law; and that an ordinance is not consistent with State law when, *inter alia*:

(2) The ordinance makes unlawful an act, omission or condition which is expressly made lawful by State or federal law;

(3) The ordinance makes lawful an act, omission, or condition which is expressly made unlawful by State or federal law;

(4) The ordinance purports to regulate a subject that cities are expressly forbidden to regulate by State or federal law;

(5) The ordinance purports to regulate a field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation. . . .

From the foregoing principles it is abundantly clear that if the General Assembly intended to delegate to the ABC Commission the exclusive authority to determine the suitability of applicants to obtain the appropriate permits and licenses to sell intoxicating beverages, then the use of any ordinance to achieve a result inconsistent with the General Assembly's delegation of authority to the ABC Commission would be unlawful.

The General Assembly, in G.S. 18B-100, has expressed its intent to establish a uniform system of control over the sale of alcoholic beverages. Moreover, G.S. 18B-100 states:

> Except as provided in this Chapter, *local ordinances establishing different rules* on the manufacture, sale, purchase, transportation, possession, consumption, or other use of alcoholic beverages, *or requiring additional permits or fees, are prohibited.*

(Emphasis supplied.) The statute we hold to be controlling in the case *sub judice*, G.S. 18B-901, extensively establishes the General Assembly's intent to delegate to the ABC Commission the exclusive authority to deny or grant permits to sell alcoholic beverages. The procedure for issuance of permits is stated in G.S. 18B-901 as follows:

> (a) Who Issues. All ABC permits shall be issued by the Commission. Purchase-transportation permits shall be issued by local boards under G.S. 18B-403.

> (b) Notice to Local Government. — Before issuing an ABC permit, for an establishment, the Commission shall give notice of the permit application to the governing body of the city in which the establishment is located. If the establishment is not inside a city, the Commission shall give notice to the governing body of the county. The Commission shall allow the local governing body 10 days from the time the notice was mailed or delivered to file written objection to the issuance of the permit. To be considered by the Commission, the objection shall state the facts upon which it is based.

> (c) Factors in Issuing Permit. Before issuing a permit, the Commission shall be satisfied that the applicant is a suitable person to hold an ABC permit and that the location is a suitable place to hold the permit for which he has applied. To be a suitable place, the establishment shall comply with all applicable building and fire codes. Other factors the commission *may consider* in determining whether the applicant and the business location are suitable are:

> (1) The reputation, character, and criminal record of the applicant;

(2) The number of places already holding ABC permits within the neighborhood;

(3) *Parking facilities and traffic conditions in the neighborhood*;

(4) Kinds of businesses already in the neighborhood;

(5) Whether the establishment is located within 50 feet of a church or public school or church school;

(6) *Zoning laws*;

(7) *The recommendations of the local governing body*; and

(8) Any other evidence that would tend to show whether the applicant would comply with the ABC laws and whether operation of his business at that location would be detrimental to the neighborhood.

(d) Commission's Authority.— *The Commission shall have the sole power, in its discretion, to determine the suitability and qualifications of an applicant for a permit.*

(Emphasis supplied.)

The General Assembly, by the plain language of G.S. 18B-901, clearly provided that the ABC Commission *may* consider local government objections and local zoning laws. There is a provision in G.S. 18B-901 which allows local governments to object to the issuance of a permit by the ABC Commission. However, G.S. 18B-901 expressly delegates the decision making power solely to the ABC Commission. The very factors that purportedly led to respondent's denial of petitioner's S.E.U. permit request are factors, such as parking and the effect on the neighborhood, that the ABC Commission has the sole power to determine, G.S. 18B-901. The North Carolina Supreme Court has recognized the extent of the decision making powers of the ABC Commission as follows:

> The State Board exercises sole discretionary powers in determining fitness of the applicant, the number of retail outlets permitted in any locality, and supervision over those who sell wines. It may revoke or suspend such permits for cause. G.S. 18-109 relieves licensing authorities state and local, of responsibility *with respect to the fitness of the applicant or place where wines may be sold. . . .* To interpret it so as to permit

local communities to override and set at nought the conclusions reached by the State Board might well reproduce the condition deplored by the 1945 Legislature.

*Staley v. The City of Winston-Salem*, 258 N.C. 244, 248-49, 128 S.E. 2d 604, 607-08 (1962) (emphasis supplied).

In the case *sub judice*, petitioner, without objection by respondent, argued that the decision of the ABC Commission to grant him a permit preempted respondent's denial of his S.E.U. permit request since the zoning ordinance, upon which respondent's denial was based, attempted to regulate the sale of alcoholic beverages which is a violation of State law. We conclude that the trial court did not err in concluding that petitioner, "as the holder of a valid ABC permit issued by the State Alcoholic Beverage Control Commission, is entitled to be issued a city beer license."

### III

Respondent next argues that the trial court lacked authority to order the Tax Collector of the City of Havelock to issue any city license. After careful consideration, we disagree.

G.S. 105-113.70 states: "[u]pon proper application and payment of the prescribed tax, issuance of a State or a local license *is mandatory* if the applicant holds the corresponding ABC permit." (Emphasis supplied.) Petitioner was a holder of a valid ABC permit and, therefore, it was mandatory that the Tax Collector of the City of Havelock issue to petitioner the city licenses to which he was entitled.

Petitioner's "Petition for Writ of Certiorari" requested of the trial court that he "have such other and further relief as the court may deem just and proper." Furthermore, petitioner's subsequent motion in this matter of his application for an S.E.U. permit raised the issue of the City of Havelock's attempt, through its zoning ordinance, to control the sale of alcoholic beverages. Petitioner placed before the court, without objection by respondent, proper documentation and supporting legal authorities that established he was entitled to issuance of a city license by the tax collector and that it was mandatory for the tax collector to issue the appropriate license. The trial court, *ex mero motu*, treated petitioner's motion as one in the nature of a motion for a writ of mandamus. We find no reversible error in the trial court's order.

## IV

Respondent argues that it was error for the trial court not to affirm its decision to deny petitioner an S.E.U. permit since its decision was supported by competent evidence. Consistent with our discussion, hereinabove, we need not address this issue due to the preemption of respondent's decision by the ABC Commission's decision to grant petitioner's request for a permit.

### Petitioner's Cross-Appeal

Petitioner, by way of a cross-appeal, challenges the trial court's conclusion that respondent's findings of fact were supported by competent evidence. In light of our decision to affirm the trial court's order, petitioner's cross-appeal is rendered moot and the same hereby is dismissed.

The decision of the trial court is

Affirmed.

Judges BECTON and PHILLIPS concur.