CASE 83—ACTION BY THE CITY OF OWENSBORO AGAINST W. N. O'BRYAN, CITY CLERK, FOR A WRIT OF MANDAMUS.—JUNE 11.

# O'Bryan, City Clerk v. City of Owensboro.

APPEAL FROM DAVIESS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

MANDAMUS—INTERVENTION—HARMLESS ERROR IN REFUSING TO PERMIT—MUNICIPAL CORPORATIONS—DETERMINATION OF POPULATION FOR PURPOSE OF APPLYING LIMITATION UPON INDEBTEDNESS—POWER TO PROVIDE SINKING FUND—POWER TO SUBMIT QUESTION OF CREATING DEBT TO VOTE.

Held:   1. It seems that, in a mandamus proceeding to compel a ministerial officer to perform an alleged duty, taxpayers have no right to intervene, as the statute does not permit such intervention.

2. The error, if any, in refusing the permit the filing of a petition tendered by persons seeking to intervene, was harmless, as the petition presented no valid objection to the relief sought by plaintiff, and the effect of refusing to permit the petition to be filed was the same as sustaining a demurrer thereto.

3. Under Const., sections 157, 158, limiting the tax rate and indebtedness of cities, the limit varying according to population, as no method is provided for ascertaining the population for that purpose, the provision made for ascertaining the population for the purpose of enabling the Legislature to classify the cities for the purpose of organization and government must be applied; and therefore a census may be taken by the city pursuant to an ordinance as provided by Kentucky Statutes,

section 3264, and such census, when taken, is conclusive, in the absence of any averment of fraud or mistake.

4. As Kentucky Statutes, section 3284,—part of charter of cities of the third class,—provides that, "subject to the limitations imposed by the Constitution," the council shall have the power to contract debts, and to borrow money and issue the bonds of the city therefor, the council of a city of the third class has statutory authority to create the sinking fund required by Const., section 159, for the payment of any debt the city may create, including bonds issued pursuant to Const., sections 157, 158, and Kentucky Statutes, section 3284.

5. Kentucky Statutes, section 3262, providing for the creation of a sinking fund to pay bonds issued by any city of the third class, is broad enough to cover any bonds the city may be authorized to issue, and is not limited to the funding bonds provided for by Kentucky Statutes, sections 3260, 3261.

6. Under Const., section 157, providing that no city shall be authorized or permitted to become indebted to an amount exceeding in any year the income and revenue provided for such year, "without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose," and Kentucky Statutes, section 3284, providing that the council of a city of the third class shall have power to contract debts, borrow money, and issue bonds "subject to the limitations imposed by the Constitution," the council may by ordinance provide for a submission to the voters of the question of contracting indebtedness in excess of the income and revenue provided for the year, though the general rule is that elections can not be held without affirmative constitutional or statutory authority; and especially will the power to provide for such an election be implied, since there is a specific grant of power by the Legislature to cities of the fourth, fifth, and sixth classes to provide for such elections, and it is not to be presumed that it was intended to confer this power upon the smaller towns and cities, and deny it to the larger ones.

7. In determining whether the existing indebtedness, plus the debt proposed to be created by a city having a population exceeding 15,000, exceeds ten per cent. of the value of the taxable property, the current expenses for the year are not to be counted as an existing debt.

8. The word "indebtedness," as used in Const., section 157, refers to indebtedness created by contract.

9. City authorities have no power to change or fix voting places, the county court alone having jurisdiction of that subject; and as the county court, by Kentucky Statutes, section 1444, has no power to change voting places after the June term next pre-

ceding an election, the voters in territory added to a city be-
tween the June term of the county court and the time of the
next election had no right to vote upon the question of the
creation of a debt by the city, submitted at that election, as
there was then no power to make provision for voting; and there-
fore the inhabitants of that territory are liable to taxation for
the debt created pursuant to that vote, as if the debt had
been created before order of annexation was made.

CHAPEZE WATHEN, FOR O'BRYAN, CARRICO & MORRISON, FOR
LANCASTER, G. W. JOLLY, FOR CITY OF OWENSBORO.

(No briefs in the record).

OPINION OF THE COURT BY JUDGE DURELLE—REVERSING.

The appellee, city of Owensboro, through its council,
took certain steps toward incurring a bonded indebtedness
of $200,000 for the purpose of erecting or procuring a
waterworks plant. Appellant, the city clerk, for the pur-
pose of testing the validity of the $200,000 of bonds, re-
fused to sign and seal them. The city instituted a pro-
ceeding for a mandamus against the clerk. The clerk filed
a general demurrer to the petition, and, without waiv-
ing his demurrer, filed an answer. The city filed a de-
murrer to the answer, and the court overruled appellant's
demurrer, sustaining the city's demurrer to the answer,
and awarded a mandamus directing the clerk to sign and
attest the bonds. Certain citizens and taxpayers tendered
a petition, seeking to be made parties, and asking that this
proceeding for mandamus be transferred to the equity
side of the docket, and there consolidated with a suit to
enjoin the issuance of the bonds. The court, on objection
by the city, refused to allow the petition to be filed.

The first question to be disposed of is as to the pro-
priety of the court's action upon the attempt of the tax-
payers to intervene in this suit. In cases where the gov-
erning authorities of municipalities exceed their powers
and violate the law, to the detriment of the taxpayers,

the citizen has an unquestioned right to appeal to proper judicial tribunals for redress, or for the prevention of threatened injury.   For appellee it is contended—and the trial court so held—that, in a mandamus proceeding to compel a ministerial officer to perform an alleged duty, there is no common-law right of intervention by taxpayers; that such right, where allowed, is wholly statutory, and our statute (Civ. Code Prac., sections 474-479, and section 29) does not permit it.   High, Extr. Rem., section 450a; Winstanley v. People, 92 Ill., 402; State v. Burkhardt, 59 Mo., 75; Harwood v. Quinby, 44 Iowa, 385.   There is much force in this contention.   But whether this ruling be correct or not, the petition of the interveners presented the same objections to the bond issue which were sufficiently presented by the answer of appellant; and it is unnecessary to pass upon that question, unless we find that some of those objections, or some additional one stated in the petition of the interveners, are valid; for, if the petition to be made parties presented no valid objection to the creation of the indebtedness, the refusal to file it was not prejudicial.   The effect of the refusal to permit the petition to be filed was the same as sustaining a demurrer thereto.

The city of Owensboro, according to the federal census of 1900, has a population of 13,189, and is therefore a city of the third class, in accordance with section 156 of the Constitution, which provides that to the third class shall belong cities with a population of 8,000 or more, and less than 20,000.   That section also provides that the General Assembly, in assigning cities and towns of the various classes provided for, "in the absence of other satisfactory information as to their population, shall be governed by the last preceding federal census in so doing."   Section 157 pro-

vides a different classification of municipalities for taxation for other than school purposes, viz., that for all towns and cities having a population of 15,000 or more the tax rate shall not exceed $1.50 on the $100; for all towns and cities having less than 15,000, and not less than 10,000, such tax rate shall not exceed $1 on the $100. This section also provides that no municipality "shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void." Section 158 provides a limitation upon the amount of indebtedness which may be incurred with the assent of two-thirds of the voters of a municipality, and forbids municipalities to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding, for cities of the third class, having a population exceeding 15,000, 10 per centum of the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, and for cities of the third class, having a population of less than 15,000, and cities and towns of the fourth class, exceeding 5 per centum of such value of the taxable property therein. This section contains, also, provisions for certain exemptions from these limitations, under conditions which do not here apply, and need not be considered.

It is conceded that the power of the voters to assent to the creation of an indebtedness of the amount here involved, and the power of the common council to levy a tax rate sufficient to provide for it, depend upon the question whether the city has a population of 15,000 or more. The

Constitution does not provide how the population shall be ascertained for this purpose. It does provide that, in order to classify them for the purposes of organization and government, the General Assembly, "in the absence of other satisfactory information as to their population shall be governed by the last preceding federal census." Nor is there any provision in the statutes for the ascertainment of the population for the purpose of fixing the tax rate, or the limit of indebtedness which may be incurred. The Constitution, however (section 156), recognizes the fact that the General Assembly may have other satisfactory information than the federal census, and may act upon it in the matter of classification for organization and government; and the statute for those purposes, recognizes the authority of the city, through its council, to take steps to ascertain the population, "by a census taken pursuant to an ordinance of said city" (section 3264, Kentucky Statutes). A similar provision for ascertainment of the population by census taken under an ordinance was held constitutional in Jernigan v. City of Madisonville (19 R., 1413) (43 S. W., 448, 39 L. R. A., 214). The city council did pass an ordinance providing for the taking of a census, by which the population was ascertained to be 15,052, and an ordinance was adopted declaring that to be the population. These facts were set up in the petition.

But it is insisted for appellant that the denial in the answer that the population was over 15,000 makes an issue to be determined, and that the question is one for judicial determination. Under section 3264, the ascertainment of the population, which is essentially a subject of legislative inquiry, is vested in the local Legislature, for the purpose of authorizing an application by the city to change its classification, and action by the General Assembly based

upon the result thus ascertained. It would seem clear that a mere averment that the population was not as great as thus ascertained, and by ordinance declared to be, would not authorize an interference with an application for change of class. That would require the averment of fraud or mistake. The result declared by ordinance being, with this limitation, conclusive for purposes of State Legislation, is it not also equally conclusive for other matters within the city's legislative power—the fixing of the tax rate and the creation of bonded indebtedness, as to which the council alone has power to act? The case of Beard v. City of Hopkinsville, 95 Ky., 244 (15 R., 756) 24 S. W., 872, 23 L. R. A., 402, 44 Am. St. Rep., 222, cited as sustaining the negative of this proposition, is not in point. There the amount of population of the city was conceded. The question was whether the constitutional inhibition applied to the city, as a self-executing provision, although the Legislature had not yet assigned Hopkinsville to the class to which it properly belonged; and it was held that the prohibition of excessive indebtedness was self-executing, and applied to cities of the prescribed population, without awaiting the legislative assignment. The assignment by the Legislature depended upon the same fact as the constitutional limitation of indebtedness. In the nature of things, the ascertainment of the population of a city is not a mere matter of clerical computation. A witness can not, by computation, ascertain it. Nor can a witness determine it by examination. It is a thing which can be determined only by means of machinery provided by the State or local Legislature. With all the care that can be taken, it can never be mathematically exact. And so the results obtained by the machinery best adapted to secure accuracy must, in the absence of fraud or mistake, be accepted as final. The

case of Lake Co. v. Graham, 130 U. S., 674, 9 Sup. Ct., 654, 32 L. Ed., 1065, is not applicable.  There the constitutional validity of an indebtedness depended on the relation of the amount of assessed value to the debt proposed.  The court held that the Legislature could not create "a municipal commission, whose finding shall be in lieu of the facts." There the question was as to a matter which was suscepti- ble of definite proof and exact ascertainment.  It was the proper subject of judicial inquiry.

It is suggested that the taking of the federal census was defective, that it did not include certain territory, re- cently annexed to the city, and that its result was unknown at the date the city census was ordered.  This, however, we do not regard as material; for, if the city council had the right to order the census, it had the right to do so, and to accept its result without regard to the result of the federal census.

After the ascertainment of the population, the city coun- cil passed an ordinance to obtain the assent of the voters to the bond issue of $200,000.  Notice was given to the county clerk to have the ballots prepared for the submission of the public question, as required by the statute (section 1459). Notice of the election was given by the mayor for 15 days; and at the November election, 1900 1,432 votes were cast for, and 440 votes against, the proposition to incur the indebtedness.  Thereupon an ordinance was passed direct- ing the issue of the bonds, and providing a tax for the pay- ment of the interest, and the creation of a sinking fund for the ultimate extinction of the debt.  Now it is con- tended for appellant that the act for the government of cities of the third class contains no provision for the crea- tion of a sinking fund for the payment of any bonds that might be issued pursuant to sections 157 and 158 of the

Constitution, and section 3284, Kentucky Statutes; that the authority granted by section 3262, providing for the payment of bonds, has reference entirely to the bonds mentioned in the two previous sections, which provide for refunding bonds, and can not be made to extend to any bonds which the city may issue for money borrowed since the adoption of the Constitution; that section 159 of the Constitution is not self-executing, and legislative authority is required to authorize the creation of a sinking fund, and to levy taxes to pay the indebtedness. With this question arises the question of the power of the municipality by ordinance to provide for the submission of the question to the vote of the people, or, in other words, provide for the holding of an election for the purpose. Says the counsel: "But that section does not authorize any city to become indebted, whether by the vote of the people or otherwise. The authority to become indebted, although the people may vote, must come from the Legislature. In other words, the Legislature must authorize the city, or grant it the power, to become indebted, provided the people assent thereto, and without this power being given to it by the Legislature, it can not become indebted for any purpose; nor could it hold any election to ascertain the assent of the voters to become so indebted. Therefore, when section 159 of the Constitution says that, whenever any city is authorized to contract an indebtedness, it shall be required at the same time to provide for the collection of an annual tax, etc., it meant that, whenever the Legislature granted to the city the authority to become indebted, by that same act the Legislature should require the city to provide for the collection of an annual tax to pay the interest on said indebtedness, and to create a sinking fund for the payment

of the principal thereof within not more than forty years from the time of contracting the same."

We have little trouble with the question suggested under section 159 of the Constitution; for it seems clear to us that, if the city had authority to submit to the voters the question of incurring the indebtedness, it was required by the terms of the act for its government to provide the sinking fund referred to in section 159 of the Constitution; for section 3284, Kentucky Statutes, provides that, "subject to the limitations imposed by the Constitution and this act, the council shall have the power to contract debts, and to borrow money and issue the bonds of the city therefor, and to control the finances and the property of the city. . . . No bonds of the city shall be sold below par." Section 159 is undoubtedly a limitation, and the statute undoubtedly, in our opinion, applies all the constitutional limitations to all indebtedness which the city may create. Moreover, section 3262, which council insists should be limited to the funding bonds provided for by sections 3260 and 3261, seems to us to be sufficiently broad to cover any bonds which the city may be authorized to issue. It reads, "Upon the issual of bonds by any city, as provided for in this act, it shall be the duty of the legislative board or the city council to cause to be carried annually to the sinking fund of the said city," etc.

The question of whether the city, by ordinance, can provide for the submission of the question to the voters, is more important and more difficult. The general rule is that elections can not be held without affirmative constitutional or statutory authority. See authorities cited in 10 Am. & Eng. Ency. Law, 562. 563. But it is insisted that this power is given by implication in the Constitution; that

where, in section 157, the municipality is forbidden to become indebted without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose, it contains, by implication, the authority to obtain that assent by submission of the question. Moreover, section 3284, above quoted, would seem, in giving the council power to contract debts, borrow money, and issue bonds, "subject to the limitations imposed by the Constitution," to authorize the performance of these prerequisites, and the obtaining of the assent of the voters, without which the power thus given would be nugatory. Besides the specific power to contract debts, subject to the limitations of the Constitution, the council is authorized by section 3290, by ordinance, to levy and collect taxes; to appropriate money and provide for the payment of debts, provide the city and the inhabitants thereof with water, light, etc., by contract or by works of its own; and finally, by subsection 40, "to carry out the full intent and meaning of this act, and to accomplish the object of this incorporation." In considering this question, which is not at all free from doubt, we observe that in the legislation concerning cities of the first class there is no specific grant of power to the city Legislature to submit such questions to the vote of the people, except the grant effected by the re-enactment of a former law creating the board of park commissioners; the provision in question being merely carried into the re-enactment in the act for the government of cities of the first class. So far as power in first-class cities to submit any other question is concerned, it must be derived by implication from the constitutional provision, or be construed as embodied in the general authority to enact ordinances not inconsistent with the Constitution. In the act for the government of cities of the second class

(section 3073, Kentucky Statutes) there is a provision for an increase of indebtedness beyond the limit named in the Constitution, "provided the assent of two-thirds of the voters voting at an election held for that purpose shall have heretofore been or may hereafter be obtained." So that, in cities of the second class, the power, if it exists, must be derived by implication. But in cities of the fourth class it is expressly given, by subsection 34 of section 3490, and the exact mode of submission provided for. So in the act for the government of cities of the fifth class (section 3637, subsection 3), which specifically gives the power to submit, and provides the exact mode in which it shall be done. And in the act for the government of cities of the sixth class (section 3705) a like provision is made. It seems in the highest degree unlikely that the Legislature intended to give this power to the three classes of small cities and towns, and deny it to the cities of the first, second and third classes. So that, by comparison of the acts for the government of the various classes of cities, we arrive at what would seem to be a legislative construction that the grant was, by implication, made to cities of the first three classes. We are of opinion, therefore, that the city had power to submit the question to the vote of the people.

It is also contended that 10 per cent. of the total valuation of the taxable property is less than the existing indebtedness plus the $200,000 of bonds proposed. In order to maintain this proposition, it seems conceded that the current expenses for the year 1901 must be counted as an existing debt. If this proposition be untenable—and we think it is—it is unnecessary to consider any other of the items concerning which there was contention in the court below. The very terms of section 157 of the Constitu-

tion seems to us to exclude the consideration of the prospective expenses of the current year from the estimate of existing indebtedness, for that section provides that the municipality shall not be authorized to become indebted to an amount "exceeding in any year the income and revenue provided for such year, without the assent of two-thirds," etc. This seems to leave the expenses of the year to be met by the income provided for such year, and to exclude it from consideration in making up the aggregate of the existing indebtedness. And it may be further suggested that the word "indebtedness," as used in the section of the Constitution, refers to indebtedness created by contract.

It is further objected that over 300 legal voters in the city were not provided with booths, ballots, etc., or places to vote, at the election of 1900, at which the vote was taken on the subject of the indebtedness in question. This objection refers to certain territory which had been annexed to the city. We quote and adopt the language of the learned trial judge in response to this objection: "After the time when the territory referred to was added to the city, there was no power to make provision for voting. The time when places of voting of the voters in the new territory might be changed had gone by. The city authorities had no power to change or fix voting places. The county court alone had jurisdiction of that subject, and, under the law (section 1444, Kentucky Statutes), no change could be made after the June term. The statute vesting this power in the county court has this provision: 'Provided that no such change, division or consolidation shall be made after the June term of each court next preceding an election.' With reference to voting, the people of the addition were in a transition state. The judgment of the

court annexing the territory had been entered, but they were left, because of this condition of the law, to vote as formerly, until the succeeding June term; and their liability to taxation for this bonded debt stands precisely as with reference to debts of the city contracted previous to the order of annexation." For the reasons given, the judgment is affirmed.

Whole court sitting.

### September 19.

Response to petition for rehearing, by Judge DuRelle:

The petition for rehearing urges that the current expenses of the city for the current year must be included in the city's existing indebtedness, which section 158 of the Constitution forbids to be increased beyond a stated maximum percentage of the taxable property in such city. None of the cases cited so holds. If this should be held to be the proper construction of the Constitution, it would follow, necessarily, that, if the city had reached the maximum indebtedness permitted by section 158, it could not incur indebtedness for current expenses, though not beyond the income and revenue provided for the current year. This could not have been the intent of the provision.

Petition overruled.