## Gross et al. v. Ross, State Auditor, et al.

Feb. 6, 1945.

384

Baker & Reams for appellants.

Eldon S. Dummit, Attorney General, and Elmer Drake and Forest Hume, Assistant Attorneys General, for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellants, who were plaintiffs below, are Gross, Mrs. Elmon Middleton, J. R. Howard and Clinton Ball, in the order named respectively, Jailer, County Clerk, Circuit Clerk and Sheriff of Harlan County. Appellees were and are, State Auditor, Treasurer, Commissioner of Revenue and the Commissioner of Finance. All appellants were elected at the general election of 1941, and assumed office in January of 1942, with the exception of Howard, circuit clerk, elected in 1939, assuming office in January, 1940.

Section 106 of our Constitution provides that the fees of county officers shall be regulated by law; that in counties having a population of 75,000 or more the clerks of the respective courts, the sheriff and jailer shall be paid out of the State Treasury by salary to be fixed by law, and the salaries of said officers and their deputies and necessary office expenses, are not to exceed 75 per centum of the fees collected by said officers, respectively, and paid into the Treasury. Section 161 of the Constitution provides that the compensation of certain officers, including those of a county, shall not be changed after election or during the term of office. Section 235 makes like provision in respect of all public officers.

Chapter 64 KRS apparently fixes the fees and compensation of offices of the character involved here. Section 64.040 provides that the circuit and county clerk of each county having a population of 75,000 or more shall be paid an annual salary of $5,000. Subsection (3) requires the clerk on the first of each month to submit to the Finance Department a verified statement showing the amount of money received or collected by him during the

preceding month, as fees or compensation for official duties, and make remittance to the department. Subsection (4) provides that the salary of such clerk and deputies, and office expenses, shall be paid monthly by the State Treasurer. If 75 per cent of the amount reported and paid in for any month be not sufficient to pay salaries and expenses, for that month, the deficit may be made up from amounts reported and paid in succeeding months. "In no event shall the amount allowed by the Department of Finance * * * for salaries and expenses exceed 75% of the amount paid * * * by such clerk during his official term." By other sections the same requirements, limitations and procedure are made to apply to other officers involved here.

Appellants filed their petition setting out dates of their several elections and inductions, and other relative matters and allege that a taking of census between April and July of 1940, showed that Harlan County had a population of 75,275 people, as shown by a certificate of the Commerce Bureau of Census filed with the Kentucky Secretary of State. It is alleged that the census enumeration was fraudulent and erroneous, and that instead of a population of the number stated, supra, the total was considerably less than 75,000. The petition then alleges specifically a number of mistakes occurring in the taking, some of which amounted to gross fraud, which if true had the effect of reducing the census figures much below the required 75,000. Since the case went to proof it will not be necessary to set out these allegations more specifically.

It is plead that defendants have wrongfully required plaintiffs to comply with the provisions of the enumerated statutes, and have illegally withheld from the various offices 25 per cent of the moneys received, reported and paid in by them to the State authorities; that since they have learned that the population of Harlan is less than 75,000 they are purposing not to comply with the statutes and that State authorities are threatening to inflict penalties prescribed by sec. 1765, KS. In short their petition sets up under Code requirements a cause of action authorizing injunction against defendants, if the facts are sufficient. This relief was asked of the circuit court.

Defendants answered by general denial, except as to the official status of all parties. Proof was taken and upon submission the Chancellor dismissed the petition.

In the judgment the chancellor said that while the proof conclusively showed fraud, perjury and subornation of perjury in the taking of the census, by certain officers and others in Harlan County for the purpose of securing classification advantages in local government, the plaintiffs could not be allowed to come into court and prove fraud and perjury to escape the consequences of the fraud. The chancellor said: "The endless link and implication in this chain of fraud must be broken somewhere, and the place to break it is as near the initial act as possible." The Chancellor realized, as we do, the seriousness of undertaking to upset the results of a census, but if fraud be apparent it makes little difference where the chain be broken. Equity is facile enough to redress fraud whenever and wherever found, within limitations.

As we digest the evidence we find that in one precinct all, or at least some of the residents of the precinct, were listed by the takers twice. It is said that by these actions several hundred duplications resulted. It is shown that in certain mining centers, by persons who kept boarding houses, a number of mine workers were listed who were nonresidents of the county, many being foreigners. The opinion was expressed that all these listed who were not residents of the County added more than 300 names to the census list. The difficulty with this and some other proof showing mistakes and irregularities in the taking is that it is not sufficiently shown that these names were reported to the local supervisor. The proof is worth no more than to indicate mistakes and irregularities, and perhaps a sinister purpose. There was some proof to show that there had been a gradual decrease in population in Harlan County since 1940, particularly by the school records, which showed more than a 2,000 decrease in the number of school children. However there is sufficient proof to show, as found by the chancellor, gross fraud in the taking of the census in the City of Harlan. One witness testified that he was employed by officers of the city to procure additional names for the city census so as the population would show as many as 5000 inhabitants. For this service he was to be and was paid $48. This witness proceeded to make up a fictitious list of 455 names, and said that some man, presumably a district supervisor, came to Harlan and told him to turn them in, and also told the local supervisor to put the names on the census roll. He, the witness, then read the names to the local supervisor, and

he wrote them in the census book. Appellants are not shown to have been connected. The testimony of this witness was not impeached. In fact counsel for appellees admit that his testimony ''rang true'' and that upon investigation following the filing of the petition no one was found to disprove the statements as to the perpetration of the fraud, which it is also admitted resulted in lowering Harlan's population to less than 75,000.

Realizing the gravity of a determination that the fraud would or could vitiate the certification of the proper census officer, we have turned to the Federal Statutes, Title 13, U. S. C. A., relating to the taking of the decennial census. Our observation leads us to the conclusion that there is nothing in the Act of Congress which lends to the certification of the Federal Supervisor any higher dignity than is given by statutes or decisions of courts to other public documents. We find very few cases dealing with the question as relating to the taking of a census by the National Government, but see no reason why the same general rules should not apply. The certification of the census by the National Supervisor is evidence of the population, and of which the courts may take judicial knowledge. People ex rel. Stoddard v. Williams, 64 Cal. 87, 27 P. 939. It is prima facie, or merely the best evidence in cases where the statutes make the act performed to depend upon the last decennial Government census. Com. v. Walter, 274 Pa. 553, 118A. 510; Garrett v. Anderson, County Judge, Tex. Civ. App., 144 S. W. 2d 971. However, our statutes with regard to the classification of officers here involved, do not make the national census the criterion. It follows, therefore, that the certificate of the National Supervisor of census is to all intents and purposes only prima facie, or in cases where it is the basis for an act, the best evidence of the fact, which may be overcome by direct and positive evidence of fraud when attacked on that ground.

We have held that when the result of a census taking is challenged, not as here on the ground of admitted fraud, the question as to whether a given territory had the population as determined by the Legislature, presents ''a question of fact, and, when disputed, must be determined by evidence, like any other fact that may be the subject of judicial inquiry.'' Com. v. Chinn, 97 Ky. 730, 735, 31 S. W. 727, 729. In Lancaster v. City of Owensboro, 72 S. W. 731, 24 Ky. Law Rep. 1978, we upheld

the validity of a local census taken where irregularities were charged, but rather intimated that the ruling would have been different if the charges had been proven, or if fraud had been charged and proven. In O'Brien v. City of Owensboro, 113 Ky. 680, 68 S. W. 858, 69 S. W. 800, the return of the local census was attacked, but upheld. We held in that case that results obtained by the machinery best adapted to secure accuracy, in the absence of fraud or mistake is to be accepted as final. In the Walters case, supra, in speaking of the effect of a national census it was held that the federal tabulation or return has no extra force in a state except as provided by the Constitution, but is to be treated only as the best evidence of the fact, and should be given the credit accorded by law to other official acts. The only place we note in our Constitution which makes the Federal census a basis for the act to be performed is sec 156, which provides that in the absence of other satisfactory information the Legislature should be governed by the last preceding Federal census. Fraud having been proven and admitted, sec 106 of the Constitution and statutes enacted in pursuance did not have the effect of bringing appellants under their terms. It is further shown without question by documentary evidence, which is undisputed, that since the 1940 census was taken the population of the county has decreased by more than two thousand inhabitants. Under the combination of facts shown we are compelled to hold that the appellants are entitled to the relief sought. Hence the judgment is reversed with directions to set aside the former order and grant the prayer of their petition.

Judgment reversed. The whole court sitting except Judge Thomas.