**Tom Trammell POLK, doing business as Tom's Liquor Store, Plaintiff in Error,**

**v.**

**OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, Defendant in Error.**

**No. 41142.**

Supreme Court of Oklahoma.

Nov. 9, 1966.

Harry C. Chapman, Cheyenne, for plaintiff in error.

Charles R. Nesbitt, Atty. Gen., Burck Bailey, Asst. Atty. Gen., for defendant in error.

BERRY, Justice:

This appeal involves the correctness of a trial court's judgment affirming an order of the Oklahoma Alcoholic Beverage Control Board, denying application for renewal of a retail liquor license.

The facts summarized hereafter are undisputed. Prior to November 1963, plaintiff owned and operated a retail liquor store in Reydon, Oklahoma. On November 26th application for a license renewal for the current year was denied by the Board. The ground for denial was that the town had less than 200 population according to the 1960 Federal Decennial Census.

Plaintiff filed suit in the district court alleging denial of his application upon the ground stated; that the enumerated census was insufficient and incorrect and erroneous, for the reason that the population of the town was in excess of 200 persons (241) on January 1, 1960; that enforcement of the Board's order pending appeal to this Court would constitute irreparable damage and impairment of plaintiff's constitutional rights. Plaintiff prayed for an order authorizing continued operation during pendancy of the action, determination that the 1960 census enumeration was inaccurate

and incorrect for the reason that the town actually had a population of 241 persons; that the Board be directed to renew plaintiff's license; and for other equitable and just relief.

Defendant's answer admitted denial of plaintiff's renewal application, but denied specifically all other allegations. The answer affirmatively alleged the Board's action was in conformity with requirements of 37 O.S.1961 § 537(c) (4), which provides:

> "No license to operate a retail package store shall issue unless such store shall be located in a city or town having a population in excess of two hundred (200) according to the 1950 Federal Decennial Census or any succeeding Federal Decennial Census."

Upon trial the parties stipulated the population of the town was 183 persons according to the 1960 census. It was stipulated further that a list compiled by the postmaster, showed a population of 241 persons as legal residents of the town on January 1, 1960. It was stipulated further that plaintiff otherwise was a qualified person except for the statutory requirement of population. Plaintiff sought to invoke the trial court's equity jurisdiction, upon the showing made as to actual population.

The trial court affirmed the Board's order upon the ground that the statute making the census the criterion for ascertaining minimum population was mandatory. Further, the court was without authority to apply equitable principles and disregard the statute in respect to the manner for determining minimum population as a basis of eligibility for location of a retail liquor store in the town. There was no determination of the constitutional issue raised by the plaintiff.

■ The trial court's judgment that the statute was mandatory, and that the court lacked authority to vary the statute under equitable principles, was based upon In re Cleveland's Claim, 72 Okl. 279, 180 P. 852, and Cantrell v. Marshall, 200 Okl. 573, 197

P.2d 990. Defendant's argument in support of such judgment is that equity follows the law, and when a party's rights are defined and established by statute equity is without authority to modify or unsettle such rights. See Cantrell v. Marshall, supra; Burtrum v. Gomes, 207 Okl. 349, 249 P.2d 717, and earlier decisions cited. As an abstract proposition the text and case authority cited, relative to equity's deference to existing statutes, state the general rule. However, in view of a serious issue presented, but not determined, efforts to resolve the matter upon such general rule appears an oversimplification of the problem.

Although the parties approach to the matter invoked the trial court's attention solely upon equitable considerations, a more serious question arises as to correctness of this judgment. The petition alleges the 1960 Decennial Census was incomplete and erroneous. This allegation was controverted by general and special denial. Thus an issue of fact was involved as to the eligibility of the town for licensing of a retail liquor store. The petition further charged that adjudication of the case upon the basis of the strict language of the statute would irreparably damage and impair plaintiff's constitutional rights. The trial court found the census provided the only method for ascertaining the issue as to eligibility of the town for location of a retail package store. This was an adjudication that the 1960 Decennial Census constituted the only means of determining eligibility for the license, which is issuable to any person possessing the other requisite qualifications.

■ The right of the Legislature to enact laws for the public health, safety and welfare is unquestioned. The wisdom of the Legislature in exercise of this prerogative is not open to judicial review. Herrin v. Arnold, 183 Okl. 392, 82 P.2d 977, 119 A.L.R. 1471. But where the Legislature acts directly, its action always is open to judicial scrutiny to prevent transgression of the limits of its power. Neither can the Legislature prevent judicial determination by any declaration or legislative finding in

the act itself. An illuminating exposition of this matter was given by C. J. Hughes in St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, p. 52, 56 S.Ct. 720, p. 726, 80 L.Ed. 1033:

"But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, with our multiplication of administrative agencies, is not one to be lightly regarded. It is said that we can retain judicial authority to examine the weight of evidence when the question concerns the right of personal liberty. But, if this be so, it is not because we are privileged to perform our judicial duty in that case and for reasons of convenience to disregard it in others. The principle applies when rights either of person or of property are protected by constitutional restrictions. Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority."

■ Every legislative act is presumed constitutional, and cannot be declared unconstitutional unless clearly so. Tate v. Logan, Okl., 362 P.2d 670. The law making authority of the Legislature is supreme within its sphere, qualified only by the restrictions and limitations imposed under the state and federal constitutions. Reed v. State Election Board, Okl., 369 P.2d 156. With these principles in mind, we are both authorized and required (Constitution, Art. VII § 2) to place a final interpretation upon this subdivision of the statute. State ex rel. Cruce v. Cease, 28 Okl. 271, 114 P. 251.

At a special election (April 7, 1959) the people of Oklahoma adopted a constitutional amendment, Art. XXVII § 1 et seq., creating the Oklahoma Alcoholic Beverage Control Board and repealing the earlier prohibition clause contained in Art. I § 7. Section 3 of the adopted amendment provided, in part:

"The Legislature shall enact laws providing for the strict regulation, control, licensing, and taxation of the manufacture, sale, distribution, possession, and transportation of alcoholic beverage, consistent with the provisions of this Amendment. * * * and all laws passed by the Legislature under the authority of the Article shall be consistent with this provision."

Then in Section 4, after defining the terms "open saloon" and prohibiting their existence, the amendment provided:

"Retail sales of alcoholic beverage shall be limited to the original sealed package, by privately owned and operated package stores, in cities and towns having a population in excess of two hundred * * *."

■ The resulting question is whether the Legislature was authorized, in view of Section 3 of the Amendment, to enact a statute (§ 537(c) (4)), which provided any qualification or limitation upon the mandatory population requirement found in Section 4 of the Amendment? Stated otherwise, can the statute be upheld under a strict application which makes the Decennial Census determinative and conclusive of the population factor fixed by the Amendment?

The authority extended the Legislature under Section 3 to enact laws implementing the Amendment contained the requirement that the laws enacted should be "consistent" with the provisions of the Amendment adopted by the people of the State. Not only does the Legislature not have authority to change the Constitution, but, in respect to Art. XXVII, the mandatory direction was as just mentioned. The Amendment provided one basic qualification, or limitation, prerequisite to issuance of a retail package store license, to-wit: a license only

could be issued, to otherwise qualified applicants, in a town having in excess of 200 population.

It is obvious a strict interpretation of Section 537(c) (4), supra, necessarily would result in an Amendment of the constitutional provision establishing the Alcoholic Beverage Control Board as adopted by the people. Sudden shifting of population from one locality to another within the State, because of economic factors arising from oil activity in different areas, is a matter of judicial knowledge. In adoption of the Amendment the people decreed that only those localities having more than 200 population were eligible for a licensed retail liquor store. Other provisions of the statutes (§ 520) make such licenses renewable annually. Determination of eligibility for the required annual license would be solely upon the Decennial Census. As the Alcoholic Beverage Control Board, and the trial court, apply the statute, an applicant in a village of 100 population under the 1960 census but with a 1963 population of 1000 persons, would not be eligible for a retail liquor license until the 1970 Decennial Census reflected the population growth. However, at the same hearing the Board could reissue an annual license to an applicant from a village which showed a census enumeration of 205 persons in 1960, despite a decline in population to 75 persons.

Constitutional aspects of the question are settled conclusively by prior decisions involving authority of the Legislature to enact laws which, in effect, change the Constitution. This question was considered in Riley v. Cordell et al., 200 Okl. 390, 194 P.2d 857, and in Findley v. State Election Board, Okl., 325 P.2d 1037. The terminal question can be defined and answered by paraphrasing the language and applying the reasoning in Findley, supra.

Although under Art. XXVII § 3, the Legislature was authorized to enact laws controlling all phases of the handling and sale of alcoholic beverages, it does not follow that it may change the Constitution in any manner. Should Section 537(c) (4)

be construed to mean that a retail liquor license is to be issued to an applicant, otherwise qualified, from any town having a population in excess of 200 persons according to the 1960 Decennial Census, this, in effect, would result in amending Art. XXVII § 4, as pointed out in the examples above mentioned. This is an unreasonable construction of the Constitution, and obviously never intended. The Constitution declares licenses are issuable in towns having in excess of 200 population. If, under the statute involved, the Board can grant or deny retail liquor licenses for a decade at a time, solely upon the basis of the census, the Legislature has effectively enlarged the constitutional limitation adopted by the people. This neither was intended by the citizens, nor "consistent with the provisions of [the] Amendment."

 The plain intention of the people, in adoption of the Amendment, was to prohibit the sale of alcoholic beverages in communities or hamlets too small to provide adequate local supervision and police protection. To accomplish this it was necessary to adopt an arbitrary population factor, and provide for issuance of retail package store licenses only in localities having a population in excess of 200 persons. In the implementing legislation the Legislature saw fit to adopt only the Decennial Census as the means to be used in ascertaining the population of any community. As to legislative authority to declare rules of evidence, and that same are subject to modification or change is unquestioned, no person having a vested right in a rule of evidence. Bekins v. City of Tulsa, Okl., 299 P.2d 792; Fry v. Wolfe, 106 Okl. 289, 234 P. 191; Ann. 31 A.L.R. 1212.

The controlling inquiry herein involves both the verity and the conclusiveness to be accorded the federal census. In 14 Am.Jur.(2) Census § 10, the text states:

" * * * The census of the population of a town may be made admissible in evidence by statute, as where a statute provides that when the completed census is filed with the town clerk it shall be-

come legal evidence of the population of the town in all cases wherein the population shall be in issue. A statute using the population of a municipality as the basis for certain governmental action, insofar as it makes the federal census conclusive evidence of the population of a municipality, does not offend the doctrine of separation of powers set forth in the state constitution. But it has also been noted that there is nothing in the federal census statute which lends to the certification of the federal census any higher dignity than is given by statutes or decisions to other public documents, and that consequently where a state statute makes population but not the census the criterion for a certain governmental act, the certificate of the federal supervisor of the census as to the population of a county is only prima facie evidence thereof or, where the census is the basis for an act, the best evidence of the fact, which may be overcome by evidence of fraud."

■ Cases involving the text statements point out that a federal census is no evidence of the population in a state two years after the census is taken. Luther v. Borden, 7 How. (U.S.) 1, 12 L.Ed 581. And, although generally the census is evidence of population of which the courts may take judicial knowledge, some courts have declared the federal census is to all intents and purposes only prima facie evidence, or the best evidence of the fact which is made the basis of an act. And, the federal census has no extra force in a state except as provided by Constitution, and is to be treated only as the best evidence of the fact and given only the credit accorded by law to other official acts. See Gross v. Ross et al., 299 Ky. 383, 185 S.W.2d 547.

The decision in In re Cleveland's Claim, 72 Okl. 279, 180 P. 852, is relied upon as authority for the Board's action, based upon the 1960 census. Neither does the holding in Cleveland, supra, support the attempted interpretation of the statute here involved,

nor conflict with the conclusion reached as to the interpretation of Section 537(c) (4). First, in Cleveland, supra, no constitutional provision was involved. And, secondly, in that case statutes specifically declared the legislative intention that, following statehood, salaries of county officers were to be based upon the federal census of 1910, and each succeeding Decennial Census, rather than upon an independent census by state or county.

■ Disposition of this appeal must be upon the record presented. The record reflects the parties' stipulation of a population of 241 persons in Reydon, Oklahoma, as of January 1, 1960. The 1960 Decennial Census, of which we take judicial knowledge, certified population of the town as being 183 persons on April 1, 1960, the census date. 13 U.S.C.A. § 141, as amended (Aug. 28, 1957) Public Law 85–207, 71 Stats. 483. The Board properly resorted to the 1960 census in determining whether plaintiff's license was reissuable in November, 1963, absent other competent evidence of population sufficient to overcome the prima facie case established by the census.

Upon appeal to the district court as provided by the act the census, of which the trial court took judicial notice, disclosed numerical population less than that required by the Amendment to provide eligibility for a retail liquor license. The plaintiff did not introduce any evidence as to population of the town as of the date of the renewal application. Absent competent evidence establishing actual population in excess of 200 persons, the trial court was required to uphold the Board's denial of the plaintiff's application.

Judgment affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, BLACKBIRD and IRWIN, JJ., concur.

HODGES, J., concurs in result.

WILLIAMS, J., dissents.