**CITY OF BARBOURVILLE, Appellant,**

v.

**KNOX COUNTY FISCAL COURT, Appellee.**

**No. 2000–CA–001220–MR.**

Court of Appeals of Kentucky.

June 29, 2001.

Discretionary Review Denied by Supreme Court Aug. 14, 2002.

Tammy S. Meade, Douglas L. McSwain, Sturgill, Turner, Barker & Moloney,

**19.** *Id.* at 142.

P.L.L.C., Lexington, KY, Kenneth M. Boggs, Barbourville, KY., for appellant.

Jaron P. Blandford, Brent L. Caldwell McBrayer, McBrayer, McGinnis, Leslie & Kirkland, P.L.L.C, Lexington, KY, David B. Jorjani, Barbourville, KY., for appellee.

Before BARBER, GUIDUGLI and HUDDLESTON, Judges.

## OPINION

HUDDLESTON, Judge:

The sole question in this appeal is the correct method that is to be used in determining a county's population under Kentucky Revised Statute (KRS) 68.197, which provides that in counties having a population of 30,000 or more, persons who pay both a county license fee and a city license fee must be allowed to credit their city license fee against their county license fee.

On October 5, 1999, the City of Barbourville approved and adopted an occupational tax ordinance that imposed a one-percent occupational license tax on trades, occupations and professions located and operating in the City of Barbourville.[1] On October 8, 1999, the Knox County Fiscal Court met and heard a second reading of a proposed one-percent occupational license tax on trades, occupations and professions in Knox County, which the Fiscal Court adopted that same day.[2]

Barbourville is a city located within Knox County. This dispute arose because the Fiscal Court refused to allow taxpayers in the City to credit their city license

tax against the county license tax, an action the City contends is mandated under KRS 68.197(4). The City filed a complaint on October 29, 1999, petitioning the circuit court for a declaration of rights, pursuant to KRS 418.445, and seeking an injunction enjoining the enforcement of the County's license tax. Then, on December 22, 1999, the City moved for a temporary injunction, or in the alternative, a writ of mandamus, to enjoin the County from collecting its license fee against city taxpayers or, in the alternative, to compel the County to grant credit to city taxpayers. The County responded to this motion on January 21, 2000, asserting that the elements for injunctive relief were not met and that the population of Knox County did not exceed 30,000, based upon the 1990 federal decennial census, which had established the population of Knox County to be 29,676. The County is not required to allow a credit to the city taxpayers, pursuant to KRS 68.197(4), if this census number is the only evidence utilized in determining the population of Knox County under KRS 68.197.

A hearing was held on January 20, 2000, to consider the City's motion and to ascertain the proper method for determining population as KRS 68.197 is silent on the issue. During the hearing the City put on evidence that the population of Knox County is over 30,000 and argued that the 1990 federal decennial census is not conclusive of the population. The County asserted that the most recent federal decen-

---

1. This tax was adopted pursuant to Ky.Rev. Stat. (KRS) 92.280, which provides that "[t]he legislative body of each city of the second to sixth class may impose license fees ... on franchises, trades, occupations and professions, and may provide for the collection of such fees."

2. The Fiscal Court approved a first reading of the tax ordinance on September 28, 1999. The County adopted the ordinance pursuant

to KRS 67.083, which provides that the fiscal court of any county is "authorized to levy all taxes not in conflict with the Constitution and statutes of [Kentucky] now or hereafter enacted," and Section 181 of the Constitution, which provides, in pertinent part, that the "General Assembly ... may, by general laws, confer on the proper authorities [of any county] the power to assess and collect such taxes."

nial census is the appropriate method to determine population under KRS 68.197. The circuit court entered an order on January 24, 2000, stating that the population requirement of KRS 68.197 was to be determined "by the most recent federal decennial census." The court denied the City's motions for injunctive relief and request for a writ of mandamus and dismissed the City's complaint, holding that KRS 68.197 was inapplicable to the case. The City appeals from that order.[3]

The City argues on appeal that the circuit court erred in its holding that the federal decennial census is the required method of determining population and that the United States Bureau of the Census's annual estimates are more accurate and the appropriate means of determining population. KRS 68.197 provides that:

(1) The fiscal court of each county having a population of thirty thousand (30,-000) or more may by ordinance impose license fees on franchises, provide for licensing any business, trade, occupation, or profession.... License fees on such business, trade, occupation, or profession for revenue purposes, except those of the common schools, may be imposed at a percentage rate not to exceed one percent (1%) of:

(a) Salaries, wages, commissions, and other compensation earned by persons within the county for work done and services performed or rendered in the county;

(b) The net profits of self-employed individuals, partnerships, professional associations, or joint ventures resulting from trades, professions, occupations, businesses, or activities conducted in the county; and

(c) The net profits of corporations resulting from trades, professions, occupations, businesses, or activities conducted in the county....

(4) [E]ffective with license fees imposed under the provisions of subsection (1) of this section on or after July 15, 1986, persons who pay a county license fee and a license fee to a city contained in the county shall be allowed to credit their city license fee against their county license fee.[4]

Obviously, the statute is silent as to the method to be used in determining a county's population.

As the issue in this case is one of first impression, the City and the County have carefully crafted arguments using case law of Kentucky and other jurisdictions and other Kentucky statutes to support their positions. The City first directs this Court to the case of *Gross v. Ross*[5] for the proposition that the federal decennial census figures are to be treated only as evidence of population of which the court may take judicial knowledge. In *Gross* the plaintiffs alleged that Harlan County had a population over 75,000 people, as evidenced by a certificate of the Commerce Bureau of Census filed with the Kentucky Secretary of State. If the population was 75,000 or more the circuit and county clerks were to receive a minimum salary of $5,000.00. The appellees alleged that the census enu-

---

3. On February 3, 2000, the City filed a motion to alter or amend the court's findings of fact, conclusions of law and order because the order mistakenly stated that the County had adopted its license tax before the City adopted its tax. An agreed order was entered on May 2, 2000, amending the court's January 24, 2000, order to reflect that the City adopted its license fee first in time.

4. For a review of the legislative history of Ky.Rev.Stat. (KRS) 68.197, see *Preston v. Johnson County Fiscal Court*, Ky., 27 S.W.3d 790, 792–94 (2000).

5. 299 Ky. 383, 185 S.W.2d 547 (1945).

meration was fraudulent and that the population was actually below 75,000. The evidence purportedly showed that several hundred people were counted twice and that several people counted were not county residents. In addressing the weight to be given to the federal decennial census, Kentucky's highest court said that:

> Our observation leads us to the conclusion that there is nothing in the Act of Congress [relating to the taking of the decennial census] which lends to the certification of the Federal Supervisor any higher dignity than is given by statutes or decisions of courts to other public documents. We find very few cases dealing with the question as relating to the taking of a census by the National Government, but see no reason why the same general rules should not apply. The certification of the census by the National Supervisor is evidence of the population, and of which the courts may take judicial knowledge. It is prima facie, or merely the best evidence in cases where the statutes make the act performed to depend upon the last decennial Government census. However, our statutes with regard to the classification of officers here involved, do not make the national census the criterion. It follows, therefore, that the certificate of the National Supervisor of census is to all intents and purposes only prima facie, or in cases where it is the basis for an act, *the best evidence of the fact,* which may be overcome by direct or positive evidence of fraud when attacked on that ground.[6]

The Court in *Gross* indicated that when a statute is silent as to the method to be used in determining population, the federal decennial census is only the best evidence of population, which may be overcome by other extrinsic evidence. Although *Gross* involved allegations of fraud, we find this reasoning to be applicable to the facts of this case.

The City offered the testimony of Dr. Michael Price, director of the Kentucky Population Research program at the University of Louisville Urban Studies Institute, during the January 20, 2000, hearing, to establish that the population in Knox County as of 1998 was over 30,000.[7] Dr. Price testified that, in his opinion, the population of Knox County exceeded 30,000. His estimate was based on two criteria: the difference between births and deaths in Knox County since the 1990 federal decennial census and the county's net migration from 1990 to 1998. Using data compiled from the Kentucky Cabinet for Health Services and the National Center of Health Statistics—data which Dr. Price maintained was quite accurate—Dr. Price opined that there was a natural increase of 1,294 persons in Knox County since 1990, a figure arrived at by subtracting the number of deaths in Knox County since 1990 (2,577) from the number of births in Knox County since 1990 (3,871). Further, Dr. Price testified that the Census Bureau estimated that the net migration in Knox County, which is the number of persons who moved into and out of Knox County from 1990 to 1998, resulted in a positive gain of 997 persons. This figure was arrived at by using data from the Internal Revenue Service, the Immigration and

6. *Id.* at 549 (citations omitted) (emphasis supplied).

7. Dr. Price's qualifications included being a research scientist at the University of Louisville's Urban Studies Institute, being Director of the Kentucky Population Research program since 1981, being the State Demographer representing the Commonwealth of Kentucky in U.S. Bureau of Census federal-state cooperative programs, and being responsible for Kentucky's official demographic forecasts.

Naturalization Service, and the Social Security Administration. Finally, Dr. Price opined that as of midyear 1998 the population in Knox County had increased to well over 30,000 citing as support for his opinion the fact that the 1990 decennial census determined that the population in Knox County was only 324 persons below 30,000 and that any estimation error would most likely be associated with migration, would likely be small and would still result in a positive number for migration.[8] The evidence presented by Dr. Price is certainly the type of evidence that could be analyzed when offered to rebut the presumption of population established by the federal decennial census.

■ Population is a factor that governs application of several other statutes contained within the Kentucky Revised Statutes. The difference between KRS 68.197 and other statutes is that several other statutes contain language that promulgates the method to be used in determining population. The General Assembly has chosen the federal decennial census to be the standard in some statutes,[9] while the Bureau of the Census's annual estimates was chosen in others.[10] Here, because the statute is silent as to the standard to be used in determining the population of a county, we must look to the traditional rules of statutory construction in an attempt to discover its intent. When determining the application of a statute, the intention of the legislature should be ascertained and given effect.[11] "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature. . . ."[12]

■ The obvious effect of KRS 68.197(4) is to benefit city taxpayers who pay both a city occupational license tax and a county occupational license tax in counties with populations of 30,000 or more by allowing the city's taxpayers to credit their city tax against the county tax. The County primarily argues that the legislature could not have intended to allow for county populations to be challenged on a yearly basis under KRS 68.197 as would a rule that sets the census estimates as the standard for determining population. However, in light of the fact that the legislature did provide that the census bureau's annual estimates are to be the basis for the determination of population under several statutes, we do not agree with the rationale of that argument. Nor do we agree that city taxpayers who may be entitled to a credit for their city occupational tax must wait until the federal decennial census results are certified in order to be able to receive the credit.

It has been stated that in statutes such as this, if the decennial census is the conclusive factor in determining population, the statutes could lie dormant and remain a "dead letter" for a period of nine or more years.[13] We do not believe this was the intention of the legislature in enacting

**8.** The results of the federal 2000 decennial census shows the population of Knox County in the year 2000 to be 31,795, an increase of 2,119 people.

**9.** *See* KRS 15.755, KRS 64.347, KRS 154.23–015, KRS 164.475, KRS 177.360, KRS 177.366, KRS 281.012 and, KRS 281.607.

**10.** *See* KRS 64.5275, KRS 67C.103 and KRS 70.045.

**11.** *See Fiscal Court Comm'rs v. Jefferson County Judge/Executive*, Ky.App., 614 S.W.2d 954, 957 (1981).

**12.** KRS 446.080(1).

**13.** *See McFarlain v. Town of Jennings*, 106 La. 541, 31 So. 62, 63 (1901); *see also Ryan v. Mayor of City of Tuscaloosa*, 155 Ala. 479, 46 So. 638, 641 (1908).

KRS 68.197. The County directs us to decisions of other jurisdictions that have discussed the proper method of determining population when the statute in question does not designate the method to be utilized. The Missouri case law cited by the County is inapposite. As the Supreme Court of Missouri pointed out in *Hardin v. Jefferson County*,[14] "[the Missouri legislature] provided no special statutory method to determine the population of a county under [Missouri Statutes Annotated] Sec. 7892. Absent such a method, the question of population is fixed by the last decennial census...."[15] The Court then cited to section 654 of the Revised Statutes of Missouri 1939.[16] Missouri's legislature had enacted a provision that the last decennial census was the default method for determining population when the statute in question is silent as to the standard to be used in determining population. The Missouri cases are not persuasive because Kentucky has no such "default" provision.

The County cites to *State v. Prevo*,[17] a North Carolina Supreme Court case involving the imposition of a license tax, the amount of which was determined by the number of inhabitants of each town. The Court stated that "the [population] classification [of statutes of this type], unless otherwise specified, is to be determined by some 'official enumeration, officially promulgated,' and, in the absence of a state statute appertaining to the subject or some authoritative municipal regulation, the federal census is *usually adopted* and allowed as controlling."[18] This authority is not, of course, controlling. In any event, the U.S. Census Bureau's annual estimates of population are trustworthy and may be relied upon.

As the County has cited to additional authority that supports the use of the federal decennial census to determine population when a statute is silent as to the method to be used, we note that jurisdictions have held differently on this issue. The City as well has directed us to numerous cases to support the use of the annual estimates for determining population under KRS 68.197.[19]

The most obvious rationale for using the federal decennial census is that it provides a "definite period" to be used in determining the population.[20] Conversely, the use of the annual estimates allows for a more accurate, up to date reading of the population. Although the federal decennial census is ordinarily an accurate measure of the population of a county, the census is not the only evidence to be considered when determining population pursuant to KRS 68.197. We join the Court in *Gross v. Ross* in holding that the federal decennial census is only the best evidence to be used in determining population under KRS 68.197. Further, we conclude that the testimony offered by Dr. Price and the annual estimates of population conducted by the U.S. Census Bureau are the types of evidence that may be considered in rebutting

**14.** 347 Mo. 410, 147 S.W.2d 643 (1941)

**15.** *Id.* at 644.

**16.** *See also Union Elec. Co. v. Cuivre River Elec. Coop.*, 571 S.W.2d 790 (Mo.Ct.App. 1978) *citing Reals v. Courson*, 349 Mo. 1193, 164 S.W.2d 306 (1942).

**17.** 178 N.C. 740, 101 S.E. 370 (1919).

**18.** *Id.* at 371 [emphasis supplied].

**19.** *See Toth v. Board of Liquor Control*, 84 N.E.2d 256 (1948); *Polk v. Oklahoma Alcoholic Beverage Control Bd.*, 420 P.2d 520 (Okla.1966); *Ryan v. Mayor of City of Tuscaloosa, supra*, n. 11; *McFarlain v. Town of Jennings, supra*, n. 11; *State ex rel. Smith v. Neal*, 25 Wash. 264, 65 P. 188 (1901).

**20.** *See Commonwealth ex rel. Woodring v. Walter*, 274 Pa. 553, 118 A. 510, 512 (Pa.1922).

the presumption created by the federal decennial census.

The circuit court erred in dismissing the City's complaint requesting injunctive relief and a writ of mandamus. We hold that, in considering the population of a county pursuant to KRS 68.197, the federal decennial census is only the best evidence of the population and supplies presumption that may be rebutted by competent evidence, which is to be determined by the trier of fact. The judgment is reversed and this case is remanded to Knox Circuit Court with directions to reinstate the City's complaint and to consider the evidence offered by the City as to the population of Knox County in 1998.

ALL CONCUR.